[Civ. No. 3322. Fifth Dist. Dec. 11, 1978.]

UNITED FARM WORKERS NATIONAL UNION, AFL-CIO et al.,
Plaintiffs and Appellants, v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS et al.,
Defendants and Respondents.

226

**COUNSEL**

Jerome Cohen, Sanford N. Nathan and George C. Lazar for Plaintiffs and Appellants.

Dickstein, Shapiro & Morin, Hurlbutt, Clevenger, Long & Richmond, Milano & Cimmet, John G. Milano, Ropers, Majeski, Kohn, Bentley & Wagner, Michael J. Brady, Bishop, Barry, Martin, Hines & Howe, Peter S. Meyerhoff, Mark G. Bonino, Michael L. Marx and Jerry K. Cimmet for Defendants and Respondents.

**OPINION**

**FRANSON, J.**—We review the propriety of the trial court's order dismissing the appellants' complaints for want of prosecution in not bringing the actions to trial within two years after filing, as provided by Code of Civil Procedure section 583, subdivision (a).[1] The procedural events upon which the trial court based its order of dismissal are as follows: On June 27, 1974, appellants United Farm Workers National Union, AFL-CIO, and 158 named individuals filed two complaints in the San Mateo County Superior Court against the respondents International Brotherhood of Teamsters, the Western Conference of Teamsters, individual respondents John J. Kovacevich and Martin Bozina, and many other named individuals and Doe defendants. The complaints arose out of events which allegedly occurred on June 28, 1973, at the property of respondent Kovacevich in Kern County. Appellants assert that they were peaceably picketing the Kovacevich property in support of recognition of the United Farm Workers Union as the collective bargaining representative for farm workers employed by Kovacevich; that various Teamsters (named and Doe defendants described in the complaints on file) under the direction of respondent Bozina threatened, assaulted, and battered the appellants and caused severe injury to their person, property, and state of mind. The complaints further alleged a deprivation of the appellants' rights of peaceable assembly and freedom of speech and sought substantial damages for redress of the alleged wrongs.

The union and grower respondents who had been served with summons appeared and answered both actions on November 6, 1974. The actions were ordered consolidated on November 18, 1974, and in response to respondents' motion to transfer the action to Kern County where the incident occurred, the San Mateo court ordered the requested transfer on December 20, 1974.

Approximately a year and a half elapsed before appellants took the next step toward prosecuting this action. On May 21, 1976, they substituted four new attorneys in place of Kennedy and Rhine whose firm had dissolved.[2] On June 29, 1976, appellants' new attorneys served

---

[1]Code of Civil Procedure section 583, subdivision (a) provides: "The court, in its discretion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed. The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council."

[2]Kennedy and Rhine were attorneys of record at the time the complaints were filed. Peter Haberfeld and Barbara Rhine were also attorneys of record when the suits were

respondents with interrogatories—the first attempt at discovery. On August 2, 1976, the respondent Western Conference of Teamsters responded to the interrogatories by objecting to each interrogatory, and on August 13, 1976, it also filed a motion to dismiss for lack of prosecution pursuant to Code of Civil Procedure section 583, subdivision (a). Similar motions were filed by the respondent International Brotherhood of Teamsters on September 7, 1976, and by the grower respondents on September 13, 1976. These motions were consolidated for hearing on November 1, 1976. During the pendency of the motions to dismiss, appellants continued to pursue discovery, and a motion to compel answers to interrogatories was granted on September 8, 1976.

In support of the respondents' motions to dismiss, a declaration was filed by Attorney Robert Long asserting that the respondents were prejudiced by appellants' delay in prosecuting the actions because "Many of the witnesses to the events in question . . . were field workers and transient pickets who are commonly known to be migratory and whose presence will be difficult, if not impossible, to obtain. The same may be true of many law enforcement officers who may be potential witnesses. Such unexcused delay also results in memories becoming dimmed by the passage of time."

Appellants filed a written opposition to the motions to dismiss supported by declarations of their past and present attorneys. Attorney Joseph Rhine stated in his declaration that he was an officer of Kennedy and Rhine, a professional corporation; that on March 31, 1975, the professional corporation was dissolved; and because of disagreements over division of cases, litigation was initiated between the former officers of the corporation. He further alleged that he had been aware that other attorneys representing the appellant United Farm Workers (hereinafter UFW) were pursuing discovery in other actions relating to the dispute between the farm workers and the respondent International Brotherhood of Teamsters. Barbara Rhine and Peter Haberfeld in a joint declaration stated that they were among the attorneys of record in the actions; that during the pendency of the actions discovery was being conducted on behalf of the UFW in two other lawsuits that "involved related factual situations."

The first of these other suits was "UFW, et al., v. Albert Leddy, individually and as District Attorney of Kern County, No. F-74-81 Civ.

---

filed. The four new attorneys were George Lazar, Steven D. Burton, Sanford Nathan, and Jerome Cohen.

(E.D. Calif.)," and discovery was conducted in that case from August 27, 1974, until December 1975. The declaration further stated that the Leddy action was based on alleged violations of civil rights of the UFW and its members by the Kern County District Attorney and his agents during the UFW strike in Kern County in the summer of 1973, and "it included within its scope the events described in the pleadings of the case at hand."

The second related lawsuit was Murguia et al., v. Municipal Court for the Bakersfield Judicial District of Kern County, LA 30426, which involved the prosecution of UFW members as defendants on various criminal charges. In that action discovery was sought on the theory that discriminatory law enforcement and prosecution constituted a valid defense. Discovery was initiated in that action on April 1, 1974, and was denied by the defendant municipal court. Rhine and Haberfeld as attorneys for the UFW and the individual defendants sought a writ in the Court of Appeal which was denied, then petitioned the Supreme Court for a hearing which was granted. The declaration states that the defense of discriminatory law enforcement "included the events described in the pleadings of the case at hand."

The declaration then recited the extensive and time consuming legal problems which arose from the UFW strike activity from August 1974 through September 1975; throughout the period of inactivity in the present actions the attorneys were handling a vast number of criminal and civil cases throughout the San Joaquin Valley. Rhine and Haberfeld stated that in light of their schedules and the related discovery underway in the other two cases, "we made the decision that in our professional opinions to hold off discovery in the [present] case until we had the results of discovery from the other two cases would do no disservice to our clients." The attorneys concluded their declarations by stating that in September 1975 the Agricultural Labor Relations Act went into effect and they were "busier than ever, . . . covering the area around Sacramento, Yuba City, Marysville and Napa Valley." In November 1975, they took official leave from the UFW.

The declaration of Attorney George C. Lazar states that he assumed the responsibility of lead counsel for appellants in the present action on April 1, 1976. He reviewed the files, reports and declarations relating to the action; the official police reports on the June 28, 1973, incident at the Kovacevich ranch (filed in this action by respondent Kovacevich in support of his motion for change of venue) showed that certain persons associated with the respondent International Teamsters Union traveled

from Coachella Valley to Kern County the day prior to the incident forming the basis of this action. The police report showed that these individuals and others went to a picket line maintained by members and supporters of the appellant UFW at the Kovacevich property; within minutes of arrival they physically attacked persons on the picket line. The actions of these Teamsters terminated upon their arrest.

In response to the declarations of Attorneys Robert Long and Michael Brady that prejudice to respondents had resulted from the delay in the prosecution of the action because of the difficulty in locating potential witnesses due to their migratory nature, Mr. Lazar stated that the Western Conference of Teamsters had available to it two ready sources for the location of potential farm worker witnesses: (1) a complete list of employees and their social security·numbers as required by the Western Conference of Teamsters contracts covering farm workers in California; (2) authorization cards which contain the name, address, social security number, and beneficiary designation of the employees of the Kovacevich ranch as required by the collective bargaining agreements between the Western Conference of Teamsters and California growers. Finally, Mr. Lazar's declaration states that many of the potential witnesses in this action for the Western Conference of Teamsters are not farm workers but "guards" organized under the Teamster banner who were allegedly recruited from the Los Angeles area to protect agricultural fields. The declaration states that the respondent Western Conference of Teamsters already had supplied to appellants the addresses of those persons who appellants allege perpetrated the attack upon them.

Attorney Lazar's declaration states that from the filing of the action against District Attorney Leddy on July 23, 1974, to the end of 1975, extensive discovery was undertaken in that action encompassing interrogatories to sheriff's deputies and production of documents relating to the incident alleged in this action, including the securing of "photographs of the weapons seized from certain Teamsters at the time of their arrest."

Appellants also filed declarations of eyewitnesses to the alleged assault and battery on appellants by Teamsters personnel on June 28, 1973. According to the affidavits, the attack was unprovoked and brutal.

None of the statements in appellants' affidavits were rebutted by respondents.

On November 8, 1976, Judge Ferguson granted the motions to dismiss. He stated his reasons as follows:

"The court is of the opinion plaintiff has failed to make some showing of good cause for the delay in the dilligent [*sic*] prosecution of this case. The declaration of Joseph Rhine does not relate the professional corporation dispute to the delay in question, but, to the contrary admits he was aware of discovery taking place in other similar cases. Barbara Rhine and Peter Haberfeld state that they intentionally delayed discovery in this case in favor of other cases.

"This court is of the opinion that the principles enunciated in *Dunsmuir Masonic Temple* v. *Superior Court,* 12 Cal.App.3d 17 [90 Cal.Rptr. 405] are applicable to the facts prescribed herein."

## DISCUSSION

We first recite certain precepts governing the trial court's exercise of discretion in ruling on a motion to dismiss under section 583, subdivision (a). ■ First, there is a strong public policy that actions are to be tried on their merits; thus, if there is any basis upon which the action can be sustained and it appears that no injustice would result, a motion to dismiss for failure to bring to trial within two years should be denied. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 563 [133 Cal.Rptr. 212].) The policy underlying section 583, subdivision (a) which seeks to prevent unreasonable delays in litigation must sometimes yield to the more powerful policy which seeks to dispose of litigation on the merits. (*Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 566; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 390 [38 Cal.Rptr. 693].) The reason is clear: " '[C]ourts exist primarily to afford a forum for the settlement of litigable matters between disputing parties. Over a long and bitter history this peaceful method of adjudication has replaced other and primitive, and indeed physical, means of resolution. (Frank, Courts on Trial, Princeton University Press (1949) pp. 5-13.) To deny the forum upon the ground that one or the other party has sacrificed it because the procedure has itself been too slow does not appeal to a mature sense of justice. Only the most compelling reasons would support a surrender of this necessary and valued right of resolution for any such cause.' " (*Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 806 [69 Cal.Rptr. 350, 442 P.2d 361], quoting from *Vecki* v. *Sorenson* (1959) 171 Cal.App.2d 390, 393 [340 P.2d 1020].)

■ Second, where a trial court dismisses the action under the two-year statute it is subject to closer appellate scrutiny than where the trial court denies the motion to dismiss. All doubts will be resolved in favor of the party attempting to get to trial. (*City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d 543, 561.) Where the decision is made on the basis of a record consisting of affidavits, memoranda of points and authorities and the court's file so that the credibility of witnesses is not involved, "a trial judge is in no better position than an appellate court in determining whether substantial justice has been done." (*Ordway* v. *Arata* (1957) 150 Cal.App.2d 71, 75 [309 P.2d 919]; *Ferris* v. *Wood* (1904) 144 Cal. 426, 428-429 [77 P. 1037].)

■ Third, in deciding whether the action should be dismissed the trial court must consider all factors relevant to the motion regardless of the grounds set forth in the supporting and opposing declarations. California Rules of Court, rule 203.5(e) provides: "(e) In ruling on the motion the court *shall* consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; *the nature and complexity of the case*; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; *the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial*; *whether the interests of justice are best served by dismissal or trial of the case or by imposing conditions on its dismissal or trial*; and any other fact or circumstance relevant to a fair determination of the issue." (Italics added.)

■ Finally, the discretion to be exercised in determining whether to dismiss the action is not a capricious or arbitrary discretion but " 'is one controlled by legal principles and is to be exercised in accordance with the spirit of the law and with a view to subserving, rather than defeating, the ends of substantial justice.' " (*Ordway* v. *Arata, supra,* 150 Cal.App.2d 71, 75, quoting from *Jepson* v. *Sherry* (1950) 99 Cal.App.2d 119, 121 [220 P.2d 819].) Thus, the decision whether to dismiss should not depend on the predilection or "mental set" of the particular judge hearing the

motion. (Tice, *The Demise (Hopefully) of an Abuse: The Sanction of Dismissal* (1971) 7 Cal. Western L.Rev. 438.)

With these principles in mind we turn to a discussion of two key cases: In *Denham* v. *Superior Court, supra,* our Supreme Court disapproved a line of Court of Appeal decisions (e.g., *Breckenridge* v. *Mason* (1967) 256 Cal.App.2d 121, 127 [64 Cal.Rptr. 201]; *Black Bros. Co.* v. *Superior Court* (1968) 265 Cal.App.2d 501, 507 etc. [71 Cal.Rptr. 344]) which had imposed a requirement that a motion to dismiss under section 583, subdivision (a) must be granted unless opposed by an adequate showing of diligence or excuse for delay. The court took the view that a refusal to dismiss should be upheld if there is any basis upon which the trial court's action could be sustained and if it appeared that no injustice would result to the defendant. (2d Cal.3d at p. 564.) The court then said: " ' "It is only when there is an entire absence of any showing constituting good cause presented in the Superior Court . . . that a writ of mandate to compel the dismissal of the action *may* properly issue." ' " (Italics added, *id.,* at p. 564.)

Shortly after *Denham* was decided, the Court of Appeal in *Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17 [90 Cal.Rptr. 405] purported to interpret *Denham* by stating: "The distinction appears to be the difference between an *adequate* showing and *any* showing. Although *Denham* removes from the plaintiff any *burden* to show good cause for delay, it does not remove plaintiff's obligation to make *some showing of good cause* before the court, upon which the court may exercise its discretion. We construe that to mean that the trial court may not act arbitrarily and deny the motion when plaintiff has made no relevant showing whatever. There must be *something* upon which a discretion can rest." (Italics orig., 12 Cal.App.3d at p. 21.)

Although *Dunsmuir* has never been approved by our Supreme Court, it has been noted with approval in subsequent Court of Appeal decisions. For example, "Dismissal is only mandated when there is an entire absence of any showing of good cause for the delay." (*City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d 543, 561; *Applegate Drayage Co.* v. *Municipal Court* (1972) 23 Cal.App.3d 628, 632 [100 Cal.Rptr. 400].)[3] For the reasons to be explained, we believe that *Dunsmuir* unduly restricts the holding in *Denham* and should be disapproved.

---

[3]The uncritical acceptance of *Dunsmuir* reminds us of Holmes' observation that one of the misfortunes of the law is that ideas become crystallized in phrases and thereafter cease to provoke critical analysis. (*Hyde* v. *United States* (1912) 225 U.S. 347, 389-391 [56 L.Ed. 1114, 1134-1135, 32 S.Ct. 793] (dis. opn. of Holmes, J.).)

In *Dunsmuir,* plaintiff's affidavit stated: " 'That at the time of her original accident and injury, she suffered severe pain and injury in the general area of her third lumbar vertebre, . . . that for a period of at least four (4) months thereafter she was compelled to remain flat on her back on boards, without moving;

" 'That she has never recovered fully, that her improvement after the first four months was painfully slow, and that she was in effect . . . a bed patient, for approximately two (2) years;

" 'That ultimately she was fitted with a body brace and support and with crutches which permitted her to move about the house, but the degree of incapacity and weakness was so great that . . . she then sustained a relapse or a reinjury to the same body area . . .; that her pain . . . was so intense and excruciating that she could not be moved, and that she thereafter was again compelled to remain absolutely motionless in bed for in excess of one or two months at the advice of her Doctor;

" ' . . . . . . . . . . . . . . . .

" 'That . . . [she] . . . was informed by [her Doctor] that her condition was inoperable, that further substantial recovery was improbable, and her condition basically permanent and susceptible to reinjury. . . .' " (12 Cal.App.3d at pp. 19-20, fn. 1.)

The reviewing court was unmoved by plaintiff's affidavit and held that since plaintiff was represented at all times by an attorney and there was no suggestion of plaintiff's inability to communicate with her attorney, plaintiff was in no position to argue that her incapacity alone constituted a good cause for the delay in bringing her action to trial within two years (*id.,* at p. 21). The reviewing court reversed the trial court's exercise of discretion and issued a writ commanding a dismissal of the action.

Contrary to *Dunsmuir,* the Supreme Court in *Denham* holds that when there is an entire absence of a showing of good cause the trial court *may* (i.e., has the discretion to) dismiss the action. *Denham* does not say that the court is required to dismiss the action absent any showing of good cause. That *Dunsmuir* misconstrued *Denham* is readily apparent from the provisions of California Rules of Court, rule 203.5 quoted above. Under that rule, which was in effect when *Dunsmuir* was decided, the trial court has a broad discretion not to dismiss an action for failure to bring to trial within two years even though the plaintiff makes no affirmative showing of excuse for the delay. For example, the trial court may review the pleadings and conclude that a grave injustice would result to the plaintiff if his case is dismissed simply because, as occurred in this

case, it was not brought to trial within two years. This assumes, of course, that the defendant has not made a strong showing of prejudice from the delay. The trial court also would have the discretion to impose reasonable conditions on permitting the case to continue to trial (rule 203.5(e)).

Before a plaintiff is subjected to the drastic penalty of having his case thrown out of court simply because he has not prosecuted it to trial within two years, he is entitled at the very minimum to have the dismissal motion evaluated under the proper legal standard. Respondents' argument that the trial court in the present case exercised its discretion only after considering all of the factors enumerated in rule 203.5, is based on conjecture. We cannot ascertain from the record whether the trial court felt compelled under *Dunsmuir* to dismiss the actions after concluding that appellants' affidavits failed to show an adequate cause for the delay or whether it dismissed the actions after considering all of the factors enumerated in rule 203.5(e). The most reasonable likelihood from its reliance on *Dunsmuir* is that once it read the declarations it concluded that it had no alternative but to order a dismissal.

The trial court's error in following *Dunsmuir* clearly prejudiced the appellants. Respondents' claim of prejudice by the delay appears to have been rebutted by appellants' uncontradicted showing that respondents had ready access to union cards and records which would enable them to locate potential witnesses. Respondent's statement that it would be difficult to locate many of the law enforcement officers who might be potential witnesses is specious; such difficulty exists in all cases which are not brought to trial within two years. Moreover, the trial court may not presume prejudice simply by the passage of time (see *City of Los Angeles v. Gleneagle Dev. Co., supra,* 62 Cal.App.3d 543, 563). It also appears from appellants' affidavits that the names of the officers appear in the police reports of the Kovacevich ranch incident and that respondents had already provided to appellants the names and addresses of the Teamster members who allegedly attacked appellants.

The change of attorneys by appellants and the workload and pressure of other business which was alleged as an explanation for the delay in prosecuting the actions may constitute an adequate excuse for the delay depending upon the "mental set" of the particular judge who hears the motion to dismiss. Contrary to respondents' bald assertion that a change of attorneys and the press of business of plaintiffs' counsel is never an excuse, the Supreme Court in *Denham* recognized that changes

in the membership of plaintiffs' attorneys' law firm with the entire burden of the office falling on another attorney, supported the trial judge's discretion in denying the motion to dismiss.[4] (See also *Brown v. Superior Court* (1970) 7 Cal.App.3d 366, 369 [86 Cal.Rptr. 670]; *Daley v. County of Butte, supra,* 227 Cal.App.2d 380, 391; *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d at p. 562, fn. 16.) Moreover, counsel's tactical decision to hold off discovery in the present cases until discovery was completed in two other cases tangentially involving the same incident could constitute adequate cause for the delay, again depending upon the mental set of the trial judge. We cannot say as a matter of law that this is not a showing of good cause.

The nature and complexity of the actions should have been taken into account by the trial court (rule 203.5(e)). The complaints allege brutal attacks on multiple plaintiffs by defendants who were agents of respondent Teamsters acting under the direction of respondent Bozina. The complaints further allege deprivation of constitutional rights. Thus, the factual and legal complexity of the cases militated against an early dismissal for want of prosecution. Moreover, the delay ended in June 1976, two years after the actions were filed and approximately 18 months after venue was transferred to Kern County. At this point in time, appellants served interrogatories on the respondents and thereafter pursued discovery through interrogatories. The showing required to justify the delay is much less at the two year stage than at the three, four, or near-five year stage. (See *Brown* v. *Superior Court, supra,* 7 Cal.App.3d 366, 369; *Feingersh* v. *Lutheran Hosp. Society* (1977) 66 Cal.App.3d 406, 411 [136 Cal.Rptr. 155].)

We do not mean to suggest by the above comments that it would have been an abuse of discretion for the trial court to have dismissed the within action if it had not relied on *Dunsmuir.* We need not and do not pass on that question. We hold only that the judgment of dismissal must be reversed because the trial court applied an improper standard under *Dunsmuir.* "The statute places no restrictions on the exercise of the trial court's discretion, and in particular there is no requirement that the

---

[4]*Respondents'* reliance on *Moore* v. *El Camino Hosp. Dist.* (1978) 78 Cal.App.3d 661 [144 Cal.Rptr. 314], for the proposition that confusion internal to a law firm caused by an attorney leaving the firm constitutes no excuse for failure to prosecute, is misplaced. In *Moore,* the court merely said that *unsworn statements* by plaintiff's counsel at the hearing on the motion to dismiss "was not a compelling showing of good cause." (78 Cal.App.3d at p. 664.)

motion to dismiss 'must' be granted unless opposed by an adequate showing of diligence or excuse for delay." (*Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 563.)

The judgments of dismissal are reversed.

Brown (G. A.), P. J., and Accurso, J.,\* concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 26, 1979. Bird, C. J., did not participate therein. White, J.,† participated therein. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.

---

\*Assigned by the Chairperson of the Judicial Council.
†Assigned by the Acting Chairperson of the Judicial Council.