[Civ. No. 58247. Second Dist., Div. Five. Aug. 13, 1981.]

INNOVEST, INC., et al., Cross-complainants and Appellants, v. ERIC BRUCKNER et al., Cross-defendants and Respondents.

COUNSEL

Fierstein & Sturman and Edward C. Broffman for Cross-complainants and Appellants.

Charles W. Willey for Cross-defendants and Respondents.

## OPINION

ASHBY, J.—Cross-complainants Innovest, Inc., and Gregory McKay appeal from an order dismissing their cross-complaint against Eric Bruckner, individually, and Eric Bruckner & Company, for failure to bring the action to trial within two years. (Code Civ. Proc., § 583, subd. (a); Cal. Rules of Court, rule 203.5.)

McKay is president of Innovest, Inc. McKay, Innovest, and others were named as defendants in a complaint brought by Pacific American Real Estate Fund 1972 (hereinafter PA72) for judicial foreclosure of a deed of trust, a deficiency judgment, and other relief. The action involved an investment in an apartment building on Ardmore Avenue in Los Angeles. McKay had defaulted on a promissory note for $436,000 secured by a deed of trust on the property.

On October 8, 1974, appellants filed a cross-complaint against the Bruckner parties, PA72, and Pacific American Real Estate Fund, Ltd. The cross-complaint alleged that Bruckner, acting on his own behalf and on behalf of the Pacific American companies made a number of false representations about the transaction. It was alleged that in the course of the various transactions Bruckner demanded an ostensible real estate commission which was in reality a usurious loan fee. Respondents answered the cross-complaint December 10, 1974.

Some discovery was initiated between appellants and respondents, but in October 1975 it was agreed between them that neither side would take further action or discovery, and that the cross-complaint would be "put on the 'back burner' for the time being, to see if a settlement [could] be worked out in the main case" between appellants and PA72.

On November 17, 1975, a settlement agreement was reached between PA72 and appellants. The agreement provided that McKay would stipulate to a judgment against him in favor of PA72 for $60,000, subject to certain modifications. The $60,000 judgment could be reduced (1) by the proceeds of a sale of the property, assuming that foreclosure by an apparently senior institutional lender could be avoided; (2) by the proceeds of a suit by PA72 against Bruckner, which PA72 was contemplating, but was not obligated by the agreement to file; or (3) by the amount of McKay's recovery against Bruckner on the instant cross-complaint. The agreement provided that the stipulated judgment would

not be filed but would be retained in trust by PA72's attorneys. The agreement provided for calculation of the debt "[a]fter the final determination of the McKAY CROSS-COMPLAINT," whereupon the attorneys for PA72 were to petition the court, upon notice, for entry of the stipulated judgment.

Thus under the terms of the settlement agreement with PA72, the longer the delay in bringing the instant cross-complaint to trial, the longer would be postponed the filing of PA72's stipulated judgment against McKay.

Nothing was done on the cross-complaint between October 1975 and March 1977. In February 1977, PA72 formally informed appellants that foreclosure had occurred, precluding any successful sale of the property, and that PA72 had concluded not to file any action against Bruckner. PA72 demanded that appellants diligently prosecute the cross-complaint. Appellants' attorney replied to PA72 that appellants had "decided to take a passive position on the Bruckner Suit until such time as we knew whether or not the 'sale proceeds' to be derived from the contemplated sale of Ardmore would be sufficient to cover the $60,000.00 stipulated figure. *We now know this is insufficient and we intend to recommence the prosecution of our action against Mr. Bruckner.*" (Italics in original.)

PA72 filed its own at-issue memorandum on March 10, 1977, and appellants filed a counter at-issue memorandum on March 22, 1977.

However, after filing the counter at-issue memorandum, appellants did nothing about the cross-complaint for over two additional years. On March 26, 1979, PA72 petitioned the court to file its stipulated judgment against McKay, on the ground that the only factor remaining in determining the amount of judgment was the McKay cross-complaint against Bruckner, and that this should be disregarded because it had not been diligently prosecuted. Appellants opposed the motion, and on April 18, 1979, appellants' attorney telephoned Bruckner's attorney with regard to scheduling Bruckner's deposition.

On May 2, 1979, at a hearing on PA72's motion to file the stipulated judgment, the court indicated that it intended to dismiss the cross-complaint on its own motion under Code of Civil Procedure section 583, subdivision (a). A hearing on that issue was continued several times in

order to satisfy the notice requirements of rule 203.5(a), California Rules of Court. The court entered its order of dismissal on July 12, 1979.

## DISCUSSION

Appellants contend that the trial court erred in dismissing the cross-complaint. ■ In this respect appellants bear a heavy burden, for an appellate court will not disturb the trial court's exercise of discretion in such matters, except for a manifest abuse exceeding the bounds of reason. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal. Rptr. 65, 468 P.2d 193]; *Corlett* v. *Gordon* (1980) 106 Cal.App.3d 1005, 1012 [165 Cal.Rptr. 524].)

■ Appellants did not file an at-issue memorandum until 16 months after respondents had answered the cross-complaint, and even then only after demands by PA72 to get the case moving. Even assuming, as contended by appellants, that the initial delay was reasonable in light of the possibility that a successful sale of the property would avoid any need to pursue the cross-complaint, appellants did nothing further for over two additional years after filing their counter at-issue memorandum. Counsel for respondents heard nothing from counsel for appellants between October 27, 1975, and April 18, 1979, when appellants inquired about taking Bruckner's deposition.[1] Appellants point out that they had already served interrogatories on Bruckner as early as August 1975. However, there had been objections to these, and appellants had taken off calendar their motion to compel answers. Appellants argue they made a tactical decision to pursue discovery of Bruckner by way of deposition rather than interrogatories, but no good cause was shown why they waited two additional years to notice a taking of deposition. The notice was filed April 19, 1979, almost a month after PA72 gave notice of its motion to file the stipulated judgment on the ground that appellants had been dilatory in prosecuting the instant cross-complaint. The trial court inferred that PA72's motion triggered appellants' sudden interest in taking the deposition.

The salient feature of this case is the fact that under the settlement agreement with PA72, the longer it took to reach a final determination of the instant cross-complaint, the longer would be delayed the filing of

---

[1]Counsel for respondents stated that he did not receive a copy of the at-issue memoranda filed by PA72 and by appellants in March 1977.

the stipulated judgment against McKay. From this and the other circumstances in the case the trial court was entitled reasonably to infer that appellants lacked a sincere desire to prosecute the cross-complaint with diligent speed.[2] The trial court could infer that the cross-complaint was not diligently pursued because delay here delayed the entry of the stipulated judgment in favor of PA72.

"One of the purposes of the statutory provision permitting dismissal for failure to prosecute an action to trial within two years is to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice—a matter of significance not only to, the parties involved in the particular lawsuit but to the public as well." (*Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 400 [153 Cal.Rptr. 912]; *Corlett* v. *Gordon, supra,* 106 Cal.App.3d 1005, 1015-1016; *Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17, 22-23 [90 Cal.Rptr. 405].) If the instant cross-complaint was clogging the court system because delay was in appellants' interest, the trial court acted properly in raising the subject of dismissal on its own motion. (See *Andre* v. *General Dynamics, Inc.* (1974) 43 Cal.App.3d 839, 844-847 [118 Cal.Rptr. 95].) In this context, the question of whether respondents were prejudiced by the delay[3] is not determinative since interests transcending those of the immediate parties were also involved. (See *Corlett* v. *Gordon, supra,* 106 Cal.App.3d 1005.)[4]

---

[2]The positions taken by appellants' counsel in the trial court were consistent with this conclusion. Appellants vigorously and repeatedly disputed the contention of PA72 that an implied condition of the settlement agreement was that appellants had a duty to pursue the cross-complaint within a reasonable time. (Civ. Code, § 1657.)

The delay in this case also brought the parties nearly to the point of mandatory dismissal for failure to bring the matter to trial within five years of the filing of the cross-complaint, which was October 8, 1974. (Code Civ. Proc., § 583, subd. (b).) At the hearing on the court's motion, held May 24, 1979, counsel for appellants told the court that theoretically he could make a motion for an early trial setting, but "... I have two problems with that. Number one, I can't think of a single ground to give Department 1 as to why I should be advanced as compared to anybody else on the calendar. Number two, I think, it would be malpractice on my part to take my client and bargain for final determination of an action in an orderly process of trial and rush him into Department 1 to try to get an early trial, so that he would be subject to the sixty thousand or possibly subjected to the sixty thousand dollar stipulated judgment at an earlier time."

[3]Compare *City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 563 [133 Cal.Rptr. 212], with *Lopez* v. *Larson, supra,* 91 Cal.App.3d 383, 402.

[4]Although we uphold the trial court's exercise of discretion in dismissing the cross-complaint, we do not conclude that this appeal is frivolous or taken solely for delay within the meaning of rule 26(a), California Rules of Court, and we decline respondents' motion to impose sanctions for the appeal.

The order of dismissal is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 11, 1981, and appellants' petition for a hearing by the Supreme Court was denied October 7, 1981. Kaus, J., did not participate therein.