[Civ. No. 31608. Fourth Dist., Div. One. May 6, 1985.]

GERARDO JIMINEZ HURTADO, Plaintiff and Appellant, v.
STATEWIDE HOME LOAN COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Robert W. Bornhoft and Bornhoft, Broughton & Berkenstadt for Plaintiff and Appellant.

Marc Philip Wane, Steven C. Smith, Laurence Stuart Warshaw and Rich & Ezer for Defendants and Respondents.

**OPINION**

**WIENER, J.**—On October 3, 1979, Gerardo Jiminez Hurtado sued for injunctive relief and damages based on defendants' fraud in inducing him to enter into a secured loan transaction. The action remained essentially

dormant from March 8, 1981, until December 8, 1983, when defendants successfully moved to dismiss under Code of Civil Procedure section 583, subdivision (a).[1] This appeal ensued. We reverse.

I

The abundant precedent generated by section 583(a) is indicative of the competing policy considerations inherent in the application of the statute. Those cases which approve the dismissal of an action stress the benefits to be gained by the timely resolution of litigation and the breadth of the court's discretion. (See, e.g., *Innovest, Inc.* v. *Bruckner* (1981) 122 Cal.App.3d 594, 599 [176 Cal.Rptr. 90]; *Corlett* v. *Gordon* (1980) 106 Cal.App.3d 1005, 1016 [165 Cal.Rptr. 524].) Cases holding to the contrary emphasize the need to have disputes resolved on their merits and the limitation on the court's discretionary power. (See, e.g., *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *United Farm Workers National Union* v. *International Brotherhood of Teamsters* (1978) 87 Cal.App.3d 225, 232-233 [150 Cal.Rptr. 761]; *City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 563 [133 Cal.Rptr. 212].)

In addition to the different policy considerations which impact appellate decisions, apparent conflicting authorities can also be reconciled by the different procedural postures of cases on appeal. Those cases affirming the denial of a dismissal motion tend to approve the court's exercise of discretion. (E.g., *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 564.) Cases disapproving a dismissal point out the discretion of the trial court is no greater than that of the appellate court. (E.g., *United Farm Workers, supra,* 87 Cal.App.3d at p. 233.)

Thus in practical terms, the trial court caught in the policy squeeze between two separate lines of cases is in the difficult position of determining, perhaps even guessing, which precedent will be applied on appeal. The chief progenitor of this judicial guessing game is the familiar "abuse of discretion" standard, which has been repeatedly held to control appellate review of trial court actions under section 583(a). (See, e.g., *Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 558 [194 Cal.Rptr. 773, 669 P.2d 9]; *Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 416 [134

---

[1]All statutory references are to the Code of Civil Procedure.

At the time defendants' motion was heard, section 583, subdivision (a) provided in relevant part: "The court, in its discretion, on motion of a party or on its own motion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed. . . ."

Our later references to subdivision (a) of section 583 will generally omit repetition of the word "subdivision."

Cal.Rptr. 402, 556 P.2d 764]; *Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 806 [69 Cal.Rptr. 305, 442 P.2d 361].) It is a standard, however, which is so amorphous as to mean everything and nothing at the same time and be virtually useless as an analytic tool. In somewhat picturesque terms, the "abuse of discretion" standard has been described as "the noise made by an appellate court while delivering a figurative blow to the trial judge's solar plexus. It is a way of saying to the trial judge, 'This one's on you.' The term has no meaning or idea content that I have ever been able to discern. It is just a way of recording the delivery of a punch to the judicial midriff." (Rosenberg, Appellate Review of Trial Court Discretion (1975) 79 F.R.D. 173, 180, (hereafter cited as *Review of Discretion*).)

It is our concern with the implications of these observations which has motivated us to write the discussion which follows. Appellate decisions should furnish firm, clearly defined, objective guidelines for trial court application. When it appears we are doing otherwise, as Professor Rosenberg indicates has happened under the "abuse of discretion" rubric, an analytic check on ourselves and an explanation to the trial court is in order.

In attempting to give substantive meaning to the abuse of discretion standard, focusing on the term "abuse" is of little help because it is a relativistic term; it depends for its meaning on an understanding of the parameters of the trial court's "discretion" in any given case. Without knowing those parameters, there is no rational way to determine whether the parameters were exceeded or, in other words, whether the court's discretion was abused.

Focusing instead on the concept of "discretion," that term in one sense refers generally to the power to decide. But every court—both trial and appellate—has "discretion" in that sense. Whether the source of the power to decide is constitutional or statutory, the essence of the judicial function is decisionmaking. "Discretion" in the sense of the "abuse of discretion" standard refers instead to the relationship between the trial and appellate decisionmaking processes and, more particularly, to the amount of deference which appellate courts accord to trial court determinations. Discretion in this sense—that is, trial court discretion—is not a sacrosanct concept. Harsh as it may sound, the nature of the relationship between superior and inferior courts dictates that trial courts have discretion only to the extent appellate courts perceive a reason to defer. The breadth of trial court discretion is a function of the degree to which appellate courts exercise deference.

Understanding the concept of discretion, however, does little to aid application of the abuse of discretion standard to any particular legal issue.

The problem is illustrated by a review of published California cases filed during the first three months of this year, revealing more than 50 cases in which the appellate court was asked to determine whether the trial court abused its discretion. The trial court actions in these cases span the variegated landscape of the law: denying a request for a preliminary injunction (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695]); denying a criminal defendant's request for a continuance to obtain private counsel (*People* v. *Courts* (1985) 37 Cal.3d 784, 789 [210 Cal.Rptr. 193, 693 P.2d 778]); granting a motion to dismiss based on the doctrine of forum non conveniens (*Rehm* v. *Aero Engines, Inc.* (1985) 164 Cal.App.3d 715, 723 [210 Cal.Rptr. 594]); determining relevance for the purposes of a discovery motion (*National Steel Products Co.* v. *Superior Court* (1985) 164 Cal.App.3d 476, 492 [210 Cal.Rptr. 535]); sustaining a demurrer without leave to amend (*Bogard* v. *Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 609, fn. 4 [210 Cal.Rptr. 578]); and granting a motion for summary judgment (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338]).

It is perhaps unnecessary to add that as the nature of these cases vary, so too does the degree of discretion which can be exercised by the trial court without "abuse." As both Professor Rosenberg and Judge Henry J. Friendly of the United States Court of Appeals for the Second Circuit, have recognized, the chief vice of the "abuse of discretion" standard lies in its propensity to obscure the basis for an appellate court's ruling. Appellate courts rarely articulate the degree of deference they are according to a trial court ruling and even less frequently analyze the reasons for according more or less deference. (See Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above* (1971) 22 Syracuse L.Rev. 635, 667 (hereafter cited as *Judicial Discretion*); Friendly, *Indiscretion About Discretion* (1982) 31 Emory L.J. 747, 784.) Professor Rosenberg explains, "To tame the concept [of discretion] requires no less than to force ourselves to say *why* it is accorded or withheld, and to say so in a manner that provides assurance for today's case and some guidance for tomorrow's." (*Review of Discretion, op. cit. supra,* 79 F.R.D. at p. 185.)

Our judicial system which provides for appellate review of trial court rulings presumes generally that where a trial and appellate court disagree, the appellate court's view will prevail. Such a systemic presumption clearly "does not reflect a view that an appellate judge is inherently more able than a trial judge." (Friendly, *op. cit. supra,* 31 Emory L.J. at p. 757.) Rather, there are structural reasons for preferring appellate court decisions as a general rule. Counsel generally have more time for thoughtful reflection on legal issues when a case is on appeal rather than in the more pressured confines of the trial court. Not only are counsel in a position to present

more refined issues, but the appellate court itself has more time and resources for research and discussion. Also of considerable significance is the collegial and pluralistic nature of the appellate court. One member of the panel may possess special expertise or insight on a problem not shared by the other members of panel, the trial judge or counsel. Moreover, the discussion and debate among judges which attends the creation of an appellate opinion illuminates the relevant issues such that the panel's collective decision is often superior to what would have been the product of any single panel member. In the same way as cross-examination is the crucible within which the truth of testimony is tested (e.g., *United States* v. *Oliver* (2d Cir. 1980) 626 F.2d 254, 262), the challenge of thoughtful debate is perhaps the best test for the soundness of legal rules. (See generally Friendly, *op. cit. supra,* 31 Emory L.J. at p. 757.)

Furthermore, as with any organizational chart, the structure of the judicial system resembles a pyramid, with appellate courts and ultimately the Supreme Court occupying the top of that pyramid. The primacy of appellate court decisions serves to foster consistency and proportion in the interpretation of law and the articulation of judicial policy which would be impossible if the decisions of individual trial courts were insulated from meaningful review. As Cardozo explained, expressing the raison d'etre for the common law precedential system, "It will not do to decide the same question one way between one set of litigants and the opposite way between another." (Cardozo, The Nature of the Judicial Process (1921) p. 33; see also Friendly, *op. cit. supra,* 31 Emory L.J. at p. 758.)

There are, of course, numerous instances in which we properly should prefer a trial court's decision on an issue to that of an appellate court. It is precisely in those circumstances where appellate court deference, and hence trial court discretion, is appropriate and desirable. What are such circumstances? The primary example is the determination of disputed facts. Where a factual determination is based on live witness testimony or review of physical evidence, there is every reason to believe a trial court's resolution will be more accurate than that of an appellate court which received no firsthand exposure to the evidence. Thus, the substantial evidence standard of review appropriately accords considerable deference to a trial court's factual findings.

The deference accorded a trial court's factual findings is only one manifestation of the principle that greater deference is warranted whenever the trial judge's "nether position" in the judicial pyramid makes him a presumptively more capable decisionmaker (*Judicial Discretion, op. cit. supra,* 22 Syracuse L.Rev. at p. 663) because of "his observation of the witnesses, [and] his superior opportunity to get 'the feel of the case.'" (*Noonan* v.

*Cunard Steamship Co.* (2d Cir. 1967) 375 F.2d 69, 71 (by Friendly, J.).) In addition to factual findings, trial court determinations falling within this rationale include a host of trial and pretrial administrative rulings such as those pertaining to continuances, pretrial conferences, many discovery matters, the conduct of counsel, cumulativeness of evidence, the extent of voir dire and the length of the trial day. (See Friendly, *op. cit. supra,* 31 Emory L.J. at pp. 760-761.) In addition, the trial court's function in ruling on motions for new trial based on sufficiency of the evidence is also accorded deference for similar reasons. (See *Widener* v. *Pacific Gas & Electric Co.* (1977) 75 Cal.App.3d 415, 440 [142 Cal.Rptr. 304].) It necessarily follows, however, that where the trial court's "nether position" does not make it the better decisionmaker, appellate court deference is inappropriate.[2]

"In short," as Judge Friendly has summarized, "the 'abuse of discretion' standard does not give nearly so complete an immunity bath to the trial court's rulings as counsel for appellees would have reviewing courts believe."[3] (Friendly, *op. cit. supra,* 31 Emory L.J. at p. 784.) Similarly, and perhaps a greater source of confusion, the standard does not give nearly so complete an immunity bath as reviewing courts intent on affirming trial court rulings would have readers believe. Having reached a conclusion on a given record, it certainly requires less effort for the appellate court to peremptorily explain the result as being "within the trial court's discretion" rather than to articulate a rationale for a rule of law. Yet resort to an "abuse of discretion" standard does not and cannot absolve reviewing courts of the obligation to state a reasoned rule. "An appellate court must carefully scrutinize the nature of the trial court's determination and decide whether that court's superior opportunities of observation or other reasons of policy require greater deference than would be accorded to its formulations of law

---

[2]Both Judge Friendly and Professor Rosenberg also suggest that a second category of cases where appellate deference may be appropriate consists of those where "the facts and circumstances involved are so endlessly variable, it is not possible to devise a rule of law or principle of decision to cover any group of situations." (*Review of Discretion, op. cit. supra,* 79 F.R.D. at p. 181; see also Friendly, *op. cit. supra,* 31 Emory L.J. at p. 760.) These authors recognize, however, that discretion supported by this rationale is often transitory because, "[a]s experience grows, the appellate courts may be able to fashion criteria for discretion that ultimately harden into rules or, at least, into guiding principles." (*Review of Discretion, op. cit. supra,* at p. 182; Friendly, *op. cit. supra,* at pp. 771-772; see also *United States* v. *Criden* (3d Cir. 1981) 648 F.2d 814, 818.) Thus, while "trial court discretion" on a given issue may be descriptive of the lack of guiding appellate principles on that issue at a frozen point in time, this rationale does not necessarily suggest that significant appellate deference is warranted on a permanent or even long-term basis. We note in this context that as a practical matter, the Supreme Court may defer to the courts of appeal in a developing area of law but this by no means signifies that the courts of appeal have any absolute discretion.

[3]Professor Rosenberg similarly concludes, "My general sense of the matter is that too much discretion in too many areas is now being accorded to trial judges by appellate courts." (*Review of Discretion, op. cit. supra,* 79 F.R.D. at p. 184.)

or its application of law to the facts." (*Ibid.*) This we now endeavor to do in the context of section 583(a).

## II

 We begin with the general rule that appellate courts will fully review trial court determinations. (See *ante,* pp. 1023-1024.) We must then inquire whether the nature of a section 583(a) motion suggests reasons to overcome the general rule and instead accord significant deference to the trial court. Our analysis leads us to conclude the trial court is in no better position than the appellate court to resolve the issues normally presented by a section 583(a) motion.

A motion to dismiss for lack of prosecution is generally handled as a law-and-motion matter. Whatever factual material is necessary for resolution of the motion is normally presented to the court by way of affidavits or declarations of the parties and their attorneys. California Rules of Court, rule 373(e) lists a variety of factors to be considered in resolving a section 583(a) motion.[4] In the usual case, none of the listed factors involve matters subject to serious factual controversy. It is well established that where the facts are largely undisputed,[5] the trial judge is in no better position than the appellate court to decide the issues in the case. (*Ferris* v. *Wood* (1904) 144 Cal. 426, 428-429 [77 P. 1037]; *Jepsen* v. *Sherry* (1950) 99 Cal.App.2d 119, 121 [220 P.2d 819].)

Nor is significant deference to the trial court necessary here because we deal with a nascent issue with which appellate courts have had insufficient

---

[4]Rule 373(e) provides: "In ruling on the motion the court shall consider all matters relevant to a proper determination of the motion, including the court's file in the case and the affidavits and declarations and supporting data submitted by the parties and, where applicable, the availability of the moving party and other essential parties for service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interest of justice are best served by dismissal or trial of the case or by imposing conditions on its dismissal or trial, and any other fact or circumstance relevant to a fair determination of the issue."

[5]Some courts have suggested that where the factual record consists of affidavits and declarations rather than live testimony, the trial court is in no better position than the appellate court to resolve disputed facts. (See e.g., *United Farm Workers, supra,* 87 Cal.App.3d at p. 233.) Whether this suggestion is true or not, it ignores the more difficult question of how any court, trial or appellate, can resolve a disputed factual issue solely by reading contradictory declarations. Fortunately we need not attempt to fashion an answer to this question in the present case because the facts on which the motion was based are largely undisputed.

experience to formulate guiding principles. (See *ante,* fn. 2.) Section 583 has existed in more or less its current form since 1905. (See Historical Note, 16 West's Ann. Code Civ. Proc. (1976 ed.) § 583, p. 232.) Literally hundreds of cases now interpret the statute, to the point that a rule of court was drafted to collect the variety of considerations repeatedly referred to in appellate court opinions. (See *ante,* fn. 4.)

On the other side of the ledger, there is a great need for consistency and unformity in interpreting section 583(a). The statute permits perhaps the most serious sanction which can be imposed on a plaintiff: dismissal of his cause of action. It should offend our sense of basic fairness to think that one plaintiff would have his case dismissed where on exactly the same set of facts, another plaintiff before a different trial judge would be allowed to proceed to trial.[6]

■ ■■■ These factors combine to yield a conclusion that where a trial court purports to dismiss an action pursuant to subdivision (a) of section 583, we review that decision as largely a question of law subject to plenary appellate scrutiny.[7] In so explicating the standard of review, we believe we are only making explicit what has been implicitly applied by numerous courts in recent years. (See, e.g., *Tannatt* v. *Joblin* (1982) 130 Cal.App.3d 1063 [182 Cal.Rptr. 112]; *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d 543; see also *Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17 [90 Cal.Rptr. 405].)

### III

### A

It remains to be determined what is the appropriate legal standard for a court—trial or appellate—to apply in ruling on or reviewing a motion to dismiss for failure to bring a case to trial within two years. In this regard, the uncontested factual record reveals Hurtado was hardly diligent in pursuing discovery or other pretrial proceedings. A deposition of one of the defendants began by Hurtado's counsel on November 17, 1980, was continued without being completed and was never resumed. Following that, the

---

[6]It is perhaps easier to accept a lack of uniformity in situations where it leads at most to marginally disparate abilities to present a case. This may justify leaving decisions on continuances, taking witnesses out of order and even the admissibility of cumulative evidence to the "discretion" of the trial judge.

[7]The express use by the Legislature of the term "discretion" in section 583(a) does not alter this conclusion. The concept, as it appears in the statute, refers not to mandated deference by appellate courts to trial judges but rather signifies deference by the Legislature to the judiciary in formulating standards to govern section 583(a) dismissals. (See generally Friendly, *op. cit. supra,* 31 Emory L.J. at pp. 754-755.)

parties entered into negotiations which resulted in a partial settlement on March 8, 1981. Over the next two-and-one-half years, Hurtado's counsel did little if anything to prosecute the lawsuit.

The record also reveals, however, that the dispute at issue in this lawsuit is interrelated with a series of transactions between Hurtado and defendant Statewide Home Loan Company involving up to seven parcels of real property. During the latter portion of 1981, the parties were apparently discussing certain balloon payments which were becoming due on promissory notes involving some of the other properties. In early 1982, Hurtado's attorney's caseload increased by approximately 100 cases due to the departure of an associate in his office. It is a fair inference that Hurtado's case was one which, in the press of business, fell through the cracks. Even the association of new counsel in January of 1983 did nothing to resurrect it from its involuntary tomb. When defendants filed their motion to dismiss in September, Hurtado obtained new counsel who soon filed an at-issue memorandum.

B

■ In determining the appropriate legal standard, we begin by examining the purpose underlying the statute. That purpose, as often repeated in the legion of cases interpreting and applying section 583, is to compel reasonable diligence in the prosecution of lawsuits. (*Jensen* v. *Western Pac. R. R. Co.* (1961) 189 Cal.App.2d 593, 596-597 [11 Cal.Rptr. 444]; *Steinbauer* v. *Bondesen* (1932) 125 Cal.App. 419, 423 [14 P.2d 106]; see also *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 721 [170 Cal.Rptr. 790, 621 P.2d 829]; *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 566.) In further analyzing this purpose, the courts have articulated two independent rationales supporting the need for reasonable diligence. The universally accepted rationale, expressed by the Supreme Court in *General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 91 [52 Cal.Rptr. 460, 416 P.2d 492], is to "promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed." In this way, the statute seeks to "extend[] to the party or parties against whom [an action] is brought an opportunity to properly present any defense which may be available at the time of the commencement of the action." (*Steinbauer* v. *Bondesen, supra,* 125 Cal.App. at p. 423.)

Some other courts, while acknowledging that prejudice to the defendant in preparing his defense is clearly a principal object of the statute, also suggest an additional rationale: that of expediting the administration of justice for the benefit of other litigants and the public in general. (See, e.g., *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 400 [153 Cal.Rptr. 912]; *Innovest, Inc.* v. *Bruckner, supra,* 122 Cal.App.3d at p. 599.) Commenting

on this rationale, the court in *Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d at pages 22-23 argued: "Criticism has been leveled at our judicial system because of delays. Some of that criticism is justified. Courts are clogged. [One of the] purpose[s] of Code of Civil Procedure section 583 is . . . [to] expedit[e] the administration of justice."

We certainly agree with the proposition that court backlog and delay is a pressing problem for the California judicial system. Judicial resources to deal with the burgeoning caseload in our civil courts are manifestly scarce. But we are unable to agree that section 583 was designed to deal with this problem. In the typical discretionary dismissal case under section 583, the plaintiff has done *nothing* for a significant period of time. Almost by definition, such a plaintiff has not been consuming scarce judicial resources: he has not been filing papers; he has not been calendaring hearings on motions. Were the Legislature to enact a statute requiring the dismissal of cases in which plaintiffs brought frivolous motions, such a statute would arguably find support in the "expedited administration of justice" rationale. Such a rationale, however, cannot reasonably be said to support section 583(a).

We are thus left with "prejudice to the defendant" as the major rationale underlying the two-year dismissal statute. Consistent with this observation, a number of courts have recently begun to focus on prejudice as the critical element in section 583(a) cases. In *City of Los Angeles* v. *Gleneagle Dev. Co., supra,* 62 Cal.App.3d 543, the court reviewed earlier cases which invoked a "presumption of prejudice" to the defendant where a plaintiff unreasonably delayed in prosecuting an action. Considering the severity of the dismissal sanction, the *Gleneagle* court found it "harsh to cut off a plaintiff's remedy to an apparently meritorious cause of action based merely on a presumption of prejudice to defendants, without more." (*Id.,* at p. 563.) Noting that the defendant had alleged no actual prejudice, the court reversed the dismissal order, concluding, ". . . in the absence of prejudice to defendants, attributable to unreasonable delays by plaintiff, the probability of a miscarriage of justice is greater when a trial on the merits is denied than it is where plaintiff is permitted to proceed." (*Ibid.*)

In *United Farm Workers, supra,* 87 Cal.App.3d 225, 236, the court relied on *Gleneagle* in rejecting a claim of presumed prejudice. Summarizing the law on the subject, the court held: "[I]f there is any basis upon which the action can be sustained and it appears that no injustice would result, a motion to dismiss for failure to bring to trial within two years should be denied." (*Id.,* at p. 232.) Several courts have recently followed and applied *Gleneagle* and *United Farm Workers* in focusing on the issue of actual prejudice to the defendant. (*Visco* v. *Abatti* (1983) 144 Cal.App.3d 904, 908 [192 Cal.Rptr. 833]; *Tannatt* v. *Joblin, supra,* 130 Cal.App.3d at p. 1069.)

We find nothing in the reasoning of the Supreme Court's most recent section 583(a) decision, *Wilson* v. *Sunshine Meat & Liquor Co., supra,* 34 Cal.3d 554 which is inconsistent with this developing focus on actual prejudice.[8] In *Wilson,* the court affirmed a trial court's dismissal of a nearly five-year-old case pursuant to section 583(a), basing its holding on the fact the plaintiff made no attempt to explain the complete lack of activity in prosecuting the case *and* on the defendant's showing of actual prejudice. (*Id.,* at pp. 558, fn. 3 and 562-563.)

Here, while we are not convinced Hurtado's attorneys prosecuted his case with all reasonable diligence, he did respond to defendant's section 583(a) motion by making a good faith showing tending to explain the reasons for the delay. More importantly, defendants make no claim of actual prejudice other than having to face continuing but unresolved allegations of fraud. As we have noted, however, "prejudice" in this context refers to constraints on a defendant's ability to defend against the allegations of the lawsuit. (See *ante,* pp. 1028-1029.) Defendants do not allege that their defense of this lawsuit has been prejudiced in any way by Hurtado's delay.

## C

Our conclusion here that a showing of some prejudice is required is supported by several independent policy considerations. Not the least of these is the fact that an involuntary dismissal for delay results in the attorney's sins being visited upon the client in a most Draconian manner: the client forfeits his cause of action. As the Supreme Court recognized in *Weeks* v. *Roberts, supra,* 68 Cal.2d at pages 806-807, "The harshness upon plaintiffs who are seldom personally responsible for delays in our system of representative litigation is manifest."[9] (See also *Brown* v. *Superior Court* (1970) 7 Cal.App.3d 366, 369 [86 Cal.Rptr. 670].) The concept of attorney negligence imputed to the client is difficult enough to swallow in the abstract. But in the absence of a showing of prejudice, the injury to the plaintiff resulting from the dismissal of his case bears no rational relationship to either his culpability or the harm suffered by the defendant. Especially in view of the express discretion accorded the judiciary by the Legislature in formulating standards to govern section 583(a) dismissals, (see *ante,* fn. 7), we find such disproportionality unacceptable.

Even assuming we were dealing with actual client negligence rather than attorney negligence, another type of disproportionality is present. Under

---

[8]Nor is such a focus inconsistent with the breadth of factors identified in rule 373 (e). (See *ante,* fn. 4.) Even where there is a showing of some prejudice, consideration of the factors in the rule may nonetheless require that the motion to dismiss be denied.

[9]The facts of the present case are illustrative. Hurtado's declaration reflects he relied on his attorneys and was not kept adequately informed of the status of his case.

normal tort law principles, a plaintiff who is determined to have been negligent in causing his injury is not totally denied recovery where there are concurrent culpable defendants. The injustice of such a rule was recognized by the Supreme Court in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 810-811 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] when it abrogated the doctrine of contributory negligence in favor of a system based on comparative fault. Especially in the absence of prejudice to the defendant, it makes little sense that a plaintiff's negligence in prosecuting his case, as opposed to causing his injury, should totally defeat his recovery.[10]

We note finally that effective January 1 of this year, subdivision (a) of section 583 has been recodified by the Legislature as part of a general reorganization of the statutes dealing with dismissals for delay in prosecution. (§ 583.410 et seq.; see generally § 583.110 et seq.) Significantly, the wording of the new statutes indicates a legislative intent to restrict the circumstances under which plaintiffs can be deprived of their day in court. The general time limit after which a court has discretion to dismiss is increased from two to three years. (§ 583.410, subd. (a)(2)(A).) The previously declared judicial policy favoring trial on the merits has now become a statement of legislatively declared state policy: "[T]he policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action . . . ." (§ 583.130.) The courts are further directed to apply this policy "in construing the provisions of this chapter." (*Ibid.*)

While this recent recodification of the dismissal statutes is not directly applicable to the present case, it demonstrates that our decision to restrict discretionary dismissals to situations in which the defendant can show some prejudice is supported not only by rational judicial policy but also by recently declared legislative policy as well. As the late Justice Tobriner eloquently explained in *Vecki* v. *Sorensen* (1959) 171 Cal.App.2d 390, 393 [340 P.2d 1020]: "[C]ourts exist primarily to afford a forum for the settlement of litigable matters between disputing parties. . . . To deny the forum upon the ground that one or the other party has sacrificed it because the procedure has itself been too slow does not appeal to a mature sense of justice. Only the most compelling reasons would support a surrender of this necessary and valued right of resolution for any such cause." We believe a case in which the defendant cannot demonstrate prejudice to be manifestly

---

[10]It is of course true that the plaintiff's negligence in these two situations occur at different points in time. If anything, however, this distinction would suggest a more lenient standard be applied to a plaintiff's negligence in prosecuting the lawsuit since such negligence can in no way be said to have caused the injury. In fact, in the absence of a showing of prejudice, such negligence arguably causes no damage at all.

uncompelling. The drastic sanction of dismissal should be reserved for more egregious circumstances.

DISPOSITION

Judgment reversed.

Brown (Gerald), P. J., and Work, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 29, 1985. Lucas, J., was of the opinion that the petition should be granted.