[No. F014197. Fifth Dist. Feb. 7, 1992.]

MICHAEL PUTNAM et al., Plaintiffs and Appellants, v.
BRIAN CLAGUE, Defendant and Respondent.

[No. F014202. Fifth Dist. Feb. 7, 1992.]

GENE C. HESS et al., Plaintiffs and Appellants, v.
BRIAN CLAGUE, Defendant and Respondent.

[No. F014371. Fifth Dist. Feb. 7, 1992.]

EDDIE D. RAGSDALE et al., Plaintiffs and Appellants, v.
BRIAN CLAGUE, Defendant and Respondent.

544

## COUNSEL

Walkup, Shelby, Bastian, Melodia, Kelly, Echeverria & Link, Paul V. Melodia, De Goff & Sherman and Victoria J. De Goff for Plaintiffs and Appellants.

Baker, Manock & Jensen, Donald R. Fischbach and Douglas M. Larsen for Defendant and Respondent.

## OPINION

**THAXTER, J.**—These three consolidated appeals present the frequently raised, always troubling, question of whether the trial court abused its

discretion in dismissing an action for delay in prosecution. We hold that when the plaintiff makes a credible showing of excuse, based on counsel's decisions which are not clearly unreasonable, dismissal should not be ordered unless the defendant was prejudiced by the delay or some other circumstance shows that the interests of justice are best served by dismissal. Here, the plaintiffs made a sufficient showing of excuse, and the defendant showed no prejudice or other factors justifying dismissal. Accordingly, we reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

Michael and Geralyn Putnam filed a complaint against defendant Brian Clague, M.D., for medical negligence, lack of informed consent, and loss of consortium on May 29, 1987. Eddie and Marcia Ragsdale filed a similar complaint on June 9, 1987, and Gene and Leona Hess did likewise on December 1, 1987. Paul V. Melodia of the law firm of Walkup, Shelby, Bastian, Melodia, Kelly & O'Reilly represented the Putnams and Hesses throughout the pendency of their actions. The Ragsdales filed their complaint in propria persona, but Melodia was substituted in as their counsel on February 26, 1988.

On March 2, 1990, defendant filed motions to dismiss the Putnam and Hess actions, citing Code of Civil Procedure[1] section 583.420, subdivision (a)(1), which provides that the court may not dismiss an action for delay unless "Service is not made within two years after the action is commenced against the defendant." Defendant's moving papers established that summonses in the Putnam and Hess actions were served on defendant's attorneys on or about January 26, 1990, and that the attorneys accepted service on defendant's behalf on February 11, 1990.

The Putnams and Hesses filed opposition to the dismissal motion in their respective actions. In each case, the plaintiffs stated that their case was one of numerous[2] cases handled by Paul Melodia against defendant Clague arising from Clague's performance of surgeries using a procedure allegedly falling below the applicable standard of care. Melodia's declaration disclosed that he elected to pursue a case filed by Randall Thompson as "a 'lead' case on the issue of negligence/standard of care, with the understanding that evidence developed in Thompson would be applicable to the other *Clague* cases. After extensive discovery, at least six experts' depositions, and a number of trial date continuances (some of which were requested by Dr.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The exact number of cases filed by Melodia against defendant is not clear from the record. There are unsubstantiated references to at least nine and as many as twelve such cases.

Clague rather than due to court congestion), the *Randall Thompson* case was settled in June of 1989. Prior to the settlement, Dr. Clague had accepted service on four other cases; . . ."

The dismissal motions were jointly heard by Judge Lawrence Jones on April 3, 1990, and were granted. The court expressly ruled that the reasons given by the plaintiffs "do not amount to excusable delay or justifiable delay." The court granted the motions on that basis alone and expressly did not reach the issue of whether Clague was prejudiced by the delay in service.

On April 4, 1990, Clague filed a similar motion in the Ragsdale action. The moving papers established that Clague's attorneys were served with the summons and complaint on March 12, 1990, and accepted service the following day. The Ragsdales filed opposition substantially similar to that filed by the Putnams and Hesses. The motion was heard and granted on May 31, 1990, by Judge Lawrence J. O'Neill.

Each set of plaintiffs filed a timely notice of appeal. The three appeals were consolidated in this court.

DISCUSSION

1. *Governing Law*

Under section 583.420, subdivision (a)(1), "The court may not dismiss an action . . . for delay in prosecution except after . . . [¶] Service is not made within two years after the action is commenced against the defendant."

In each of the instant cases, service was not made within two years of commencement of the action. Thus, under section 583.420 the court below had discretion to dismiss the actions. Appellants argue the court abused that discretion.

" 'Although discretion is vested in the trial judge, that discretion is not unfettered. It cannot be exercised arbitrarily, but must be an impartial discretion to be exercised in conformity with the spirit of the law and in a manner to subserve the ends of substantial justice.' [Citation.]" (*Longshore* v. *Pine* (1986) 176 Cal.App.3d 731, 737 [222 Cal.Rptr. 364].)

Section 583.420, subdivision (a)(1) was enacted when the Legislature revised the statutes relating to involuntary dismissal for failure to prosecute. (See Stats. 1984, ch. 1705, § 5, p. 6180.) That revision resulted from recommendations following an intensive study of the subject by the Califor-

nia Law Revision Commission. (See Recommendation Relating to Dismissal for Lack of Prosecution, 16 Cal. Law Revision Com. Rep. (1982) p. 2207; Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 907.)

The Law Revision Commission summarized its reasons for recommending revision of the dismissal statutes:

"Over the years the attitude of the courts and the Legislature toward dismissal for lack of prosecution has varied. From around 1900 until the 1920's the dismissal statutes were strictly enforced. Between the 1920's and the 1960's there was a process of liberalization of the statutes to create exceptions and excuses. Beginning in the late 1960's the courts were strict in requiring dismissal. In 1969 an effort was made in the Legislature to curb discretionary court dismissals, but ended in authority for the Judicial Council to provide a procedure for dismissal. In 1970 the courts brought an abrupt halt to strict construction of dismissal statutes and began an era of liberal allowance of excuses that continues to this day. The current judicial attitude has been stated by the Supreme Court: 'Although a defendant is entitled to the weight of the policy underlying the dismissal statute, which seems to prevent unreasonable delays in litigation, the policy is less powerful than that which seeks to dispose of litigation on the merits rather than on procedural grounds.'

"Fluctuations in basic procedural policy are undesirable. Every policy shift generates additional litigation to establish the bounds of the law. The policy of the state towards dismissal for lack of prosecution should be fixed and codified, and the dismissal statutes should be construed consistently with this policy. The Law Revision Commission believes that the current preference for trial on the merits over dismissal on procedural grounds is sound and should be preserved by statute. The proposed legislation contains a statement of this basic public policy." (17 Cal. Law Revision Com. Rep., *op. cit. supra*, at pp. 910-911, fns. omitted.)

The Legislature followed the commission's recommendation for enactment of section 583.130 directing that, "[e]xcept as otherwise provided by statute or by rule of court adopted pursuant to statute, the policy favoring the right of parties to make stipulations in their own interests and the policy favoring trial or other disposition of an action on the merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action . . . ."

Notwithstanding the legislative declaration favoring trial on the merits over dismissal for delay in prosecution and despite the commission's stated

desire that "the dismissal statutes should be construed consistently with this policy," cases upholding discretionary dismissals for delay in prosecution abound.[3] Several other reported decisions have concluded that discretionary dismissal was not warranted under the particular circumstances of those cases.[4] Apparently, neither the statutory revision nor the Judicial Council's adoption of a rule listing relevant matters a court may consider in ruling on a motion for discretionary dismissal (Cal. Rules of Court,[5] rule 373(e)) has reduced the discretionary dismissal issues arising at both the trial and appellate levels. Because the statutes reflect policies pulling in opposite directions, uncertainty and inconsistency of application are apparently inevitable.

■ One rule which has rather clearly emerged from the decisional law is that the plaintiff, opposing a motion to dismiss for delay in prosecution, has the initial burden to show excusable delay. Only after he has done so does the court consider other factors such as prejudice. (See, e.g., *Wong* v. *Davidian, supra,* 206 Cal.App.3d at pp. 269-270; *Cordova* v. *Vons Grocery Co., supra,* 196 Cal.App.3d at p. 1533; *Trailmobile, Inc.* v. *Superior Court, supra,* 210 Cal.App.3d at pp. 1457-1458; *Schumpert* v. *Tishman Co., supra,* 198 Cal.App.3d at p. 606.) "[T]he policy of disposing of litigation on the merits does not prevail unless the plaintiff makes some showing of excusable delay." (*Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d at p. 1567; see *Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 347 [228 Cal.Rptr. 504, 721 P.2d 590].) "When faced with a motion to dismiss it is incumbent upon plaintiff to establish reasonable or excusable delay in service. If such a showing is not made, the court may dismiss the action in its discretion even if defendant fails to establish actual prejudice." (*Hilliard* v. *Lobley, supra,* 216 Cal.App.3d at p. 642.)

---

[3]See, for example, *A. Groppe & Sons Glass Co., Inc.* v. *Fireman's Fund Ins. Co.* (1991) 232 Cal.App.3d 220 [283 Cal.Rptr. 352]; *Kuchins* v. *Hawes* (1990) 226 Cal.App.3d 535 [276 Cal.Rptr. 281]; *Hilliard* v. *Lobley* (1989) 216 Cal.App.3d 638 [265 Cal.Rptr. 5]; *Trailmobile, Inc.* v. *Superior Court* (1989) 210 Cal.App.3d 1451 [259 Cal.Rptr. 100]; *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co.* (1989) 210 Cal.App.3d 740 [258 Cal.Rptr. 545]; *Wong* v. *Davidian* (1988) 206 Cal.App.3d 264 [253 Cal.Rptr. 675]; *County of Los Angeles* v. *Superior Court* (1988) 203 Cal.App.3d 1205 [250 Cal.Rptr. 481]; *Danielson* v. *ITT Industrial Credit Co.* (1988) 199 Cal.App.3d 645 [245 Cal.Rptr. 126]; *Schumpert* v. *Tishman Co.* (1988) 198 Cal.App.3d 598 [243 Cal.Rptr. 810]; *Clark* v. *Stabond Corp.* (1987) 197 Cal.App.3d 50 [242 Cal.Rptr. 676].

[4]See, for example, *Highland Stucco & Lime, Inc.* v. *Superior Court* (1990) 222 Cal.App.3d 637 [272 Cal.Rptr. 60]; *Pomona Federal Plaza, Ltd.* v. *Investment Concepts, Inc.* (1988) 203 Cal.App.3d 217 [249 Cal.Rptr. 757]; *Cordova* v. *Vons Grocery Co.* (1987) 196 Cal.App.3d 1526 [242 Cal.Rptr. 605]; *Cubit* v. *Ridgecrest Community Hospital* (1987) 194 Cal.App.3d 1552 [240 Cal.Rptr. 346]; *Rim Forest Lumber Co.* v. *Woodside Construction Co.* (1987) 190 Cal.App.3d 454 [235 Cal.Rptr. 443].

[5]All further references to rules are to the California Rules of Court unless otherwise indicated.

What is not clear, however, is what constitutes reasonable or excusable delay. This question is important here because the plaintiffs did offer an excuse for the delays in service but the court below rejected it. Before we can decide whether the court properly exercised its discretion, we must analyze the rule imposing the initial burden on the plaintiff and the reasons behind that rule.

Our discussion begins with *Denham* v. *Superior Court* (1970) 2 Cal.3d 557 [86 Cal.Rptr. 65, 468 P.2d 193] in which the Supreme Court expressly disapproved language in several earlier Court of Appeal decisions to the effect that a motion to dismiss " 'must' be granted unless opposed by an adequate showing of diligence or excuse for delay." (*Id.* at p. 563.) The court went on to state that because "there was not 'an entire absence of any showing constituting good cause presented in [respondent court] upon the hearing of the motion to dismiss,' " a writ of mandate directing dismissal should not issue. In *Denham*, the appellate record did not reveal what showing of excusable delay was made in the trial court. The Supreme Court relied on the presumption that the lower court's denial of the dismissal motion was correct because all intendments from a silent record are indulged to support the order. (*Id.* at p. 564.)

In *Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406 [134 Cal.Rptr. 402, 556 P.2d 764], a complaint naming several defendants, including Chronicle Publishing Company, was filed on February 19, 1969. After obtaining several extensions of time to plead, Chronicle demurred. The demurrer was overruled, but the plaintiff did not give notice of the ruling until February 23, 1973. Thereafter, Chronicle's motion for judgment on the pleadings was granted, and the plaintiff filed a second amended complaint which Chronicle answered on November 7, 1973. The plaintiff filed an at-issue memorandum and moved to advance the cause for trial. Less than three months before the fifth anniversary of the action's filing, the court denied the motion to advance and granted its own motion to dismiss. The Supreme Court affirmed, stating:

"Plaintiff's only arguments in the appellate briefs, as well as in argument to the trial court, in support of his motion to advance are that he was ready to proceed to trial and under *Weeks* [v. *Roberts* (1968) 68 Cal.2d 802 (69 Cal.Rptr. 305, 442 P.2d 361)], the court should have given him a trial date. He makes no showing of excuse for the delay, but merely supports an assertion of due diligence by listing a chronology of the various papers in the court's file. The record in the lower court does not reflect what showing of excuse was made orally at the hearing on the motion to advance. The record reflects that the trial court had good cause to dismiss on its own motion. The

plaintiff has failed to meet his burden of showing excusable delay." (*Sanborn v. Chronicle Pub. Co., supra,* 18 Cal.3d at p. 418.)

*Sanborn* was followed in *Wilson* v. *Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554 [194 Cal.Rptr. 773, 669 P.2d 9]. There, the complaint was filed on June 30, 1976, and, after a demurrer was sustained, was amended in December 1977. The plaintiff conducted no discovery and did not otherwise prosecute his action until May 18, 1981, when, facing the five-year mandatory dismissal statute, he moved to specially set the case for trial. His moving papers "contained no explanation for the delay in prosecution." (*Id.* at p. 558, fn. 3.) The trial court denied the motion for special setting and, on its own motion, dismissed the case. The Supreme Court affirmed, stating that "[t]he more compelling policy favoring resolution on the merits will only prevail where plaintiff makes *some* showing of excusable delay. (*Id.* at pp. 562-563, italics in original.)

Without mentioning *Sanborn* or *Wilson* the Supreme Court seems to have applied the rule from those cases in *Blank* v. *Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58]. In affirming a discretionary dismissal as to some defendants, the court noted that for a period of almost three and one-half years "plaintiff did virtually nothing to prosecute this action." Thus, the lower court was justified in granting the dismissal motion even if defendants were not prejudiced by the failure to prosecute. (*Id.* at p. 332.)

In *Salas* v. *Sears, Roebuck & Co., supra,* 42 Cal.3d 342, the Supreme Court again referred to the rule announced in *Sanborn* and *Wilson.* In *Salas* the question was whether the trial court abused its discretion by denying the plaintiff's motion for trial preference which, in turn, led to mandatory dismissal under the five-year statute. The Supreme Court emphasized that the plaintiff offered no excuse for his delay in prosecution, particularly for a 10-month period after the case was removed from the civil active list because of the plaintiff's failure to give proper notice of a trial setting conference. The Supreme Court said:

"The situation confronting the trial court in the present case is nearly identical to that in *Wilson.* In both instances plaintiffs were guilty of an appalling lack of diligence and offered no justification for the delay. As in *Wilson,* plaintiffs here rely on our general policy in favor of trial on the merits. Once again, however, we conclude that although the interests of justice weigh heavily against disposing of litigation on procedural grounds—a policy we reaffirm—that policy will necessarily prevail only if a plaintiff makes some showing of excusable delay." (42 Cal.3d at p. 347, fn. omitted.)

Insofar as the Supreme Court has spoken to this issue, then, the rule is that a plaintiff who offers *no* excuse or justification for his delay in prosecution

cannot simply rely on the policy favoring trial on the merits. The Supreme Court has never articulated the reasons underpinning this rule. Presumably the rule rests on a recognition that the discretionary dismissal statutes would be effectively nullified if a plaintiff could simply defeat dismissal by relying on the policy favoring trial on the merits even when the delay in prosecution is completely inexcusable and unjustified. (See *Trailmobile, Inc.* v. *Superior Court, supra,* 210 Cal.App.3d at p. 1455.)

The Supreme Court decisions offer no guidance as to what quantum of showing is necessary for the plaintiff to meet his burden or as to what constitutes excuse or justification for delay.

Several Court of Appeal opinions are consistent with *Sanborn, Wilson,* and *Salas,* holding that when the plaintiff offers no explanation for delays in service or other prosecution of the action, dismissal is warranted. (*Kuchins* v. *Hawes, supra,* 226 Cal.App.3d at p. 541; *Hilliard* v. *Lobley, supra,* 216 Cal.App.3d at pp. 641-642; *Wong* v. *Davidian, supra,* 206 Cal.App.3d at pp. 266-269; *San Ramon Valley Unified School Dist.* v. *Wheatley-Jacobsen, Inc.* (1985) 175 Cal.App.3d 1050, 1055-1058 [221 Cal.Rptr. 342].)

In many other Court of Appeal cases, however, the plaintiff, as here, offered some explanation to excuse or justify the delay. In some of those cases the appellate court concluded the plaintiff met his burden and dismissal was unwarranted. (*Highland Stucco & Lime, Inc.* v. *Superior Court, supra,* 222 Cal.App.3d at pp. 645-646; *Pomona Federal Plaza, Ltd.* v. *Investment Concepts, Inc., supra,* 203 Cal.App.3d at pp. 221-224; *Cordova* v. *Vons Grocery Co., supra,* 196 Cal.App.3d at pp. 1532-1536; *Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d at pp. 1562-1569; *Rim Forest Lumber Co.* v. *Woodside Construction Co., supra,* 190 Cal.App.3d at pp. 460-470; *Hilburger* v. *Madsen* (1986) 177 Cal.App.3d 45 [222 Cal.Rptr. 713]; *Visco* v. *Abatti* (1983) 144 Cal.App.3d 904 [192 Cal.Rptr. 833]; *Tannatt* v. *Joblin* (1982) 130 Cal.App.3d 1063 [182 Cal.Rptr. 112]; *Garza* v. *Delano Union Elementary School Dist.* (1980) 110 Cal.App.3d 303 [167 Cal.Rptr. 629].)

In other cases, however, the appellate court concluded that the plaintiff's showing was insufficient and dismissal was justified even if the defendant did not demonstrate actual prejudice from the delay. (*Ladd* v. *Dart Equipment Corp.* (1991) 230 Cal.App.3d 1088 [281 Cal.Rptr. 813]; *Trailmobile, Inc.* v. *Superior Court, supra,* 210 Cal.App.3d 1451; *County of Los Angeles* v. *Superior Court, supra,* 203 Cal.App.3d 1205; *Schumpert* v. *Tishman Co., supra,* 198 Cal.App.3d 598; *Longshore* v. *Pine, supra,* 176 Cal.App.3d at pp. 734-738; *Luti* v. *Graco, Inc.* (1985) 170 Cal.App.3d 228 [215 Cal.Rptr. 902].)

In yet another line of cases, courts concluded that dismissal was proper *both* because the plaintiff did not make a sufficient showing to excuse the delay *and* because the defendant showed actual prejudice. (*State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra,* 210 Cal.App.3d 740; *Danielson* v. *ITT Industrial Credit Co., supra,* 199 Cal.App.3d 645; *Clark* v. *Stabond Corp., supra,* 197 Cal.App.3d 50; *Adams* v. *Roses* (1986) 183 Cal.App.3d 498 [228 Cal.Rptr. 339]; *Corlett* v. *Gordon* (1980) 106 Cal.App.3d 1005 [165 Cal.Rptr. 524]; *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383 [153 Cal.Rptr. 912].)

If there is some coherent legal standard linking all these decisions, it has eluded our scrutiny. (E.g., compare *County of Los Angeles* v. *Superior Court, supra,* 203 Cal.App.3d at p. 1209 [the investigation or procurement of evidence does not excuse a long unexplained delay in serving the complaint] with *Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d at pp. 1567-1569 [investigation as to cause of death excused a 35-month delay in service].) Rather than attempt to reconcile the apparently irreconcilable, we will instead focus on decisions from this court to derive a rule which is consistent with our prior opinions.

This court has published four prior opinions dealing with the question of what constitutes good cause for delay in prosecution. The first was *United Farm Workers National Union* v. *International Brotherhood of Teamsters* (1978) 87 Cal.App.3d 225 [150 Cal.Rptr. 761]. The trial court there granted a motion to dismiss because of the plaintiffs' failure to bring the case to trial within two years. Service was apparently made promptly on some defendants who appeared and answered less than five months after the action was filed. The plaintiffs failed to take further action, however, for approximately a year and a half, when they substituted new attorneys of record. The new attorneys promptly initiated discovery but were met by dismissal motions. In opposition the plaintiffs filed declarations of their past and present attorneys, stating that the professional corporation originally representing the plaintiffs was dissolved about 10 months after the action was filed. The attorneys also asserted that they decided to postpone discovery in the instant action because attorneys representing the plaintiff union were conducting discovery in two other related actions. (At p. 232.) The trial court found that the plaintiffs failed to make " 'some showing of good cause for the delay' " in prosecuting the action. The trial court expressly cited and relied on *Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17 [90 Cal.Rptr. 405].

This court reversed the dismissal order because the trial court may have felt compelled under *Dunsmuir* to dismiss if the plaintiffs failed to show adequate cause for delay in prosecution. Disapproving *Dunsmuir*, this court

went on to say that the change of attorneys and the decision to delay discovery pending discovery in the related cases might constitute a showing of good cause. (*United Farm Workers National Union* v. *International Brotherhood of Teamsters, supra,* 87 Cal.App.3d at pp. 234-238.) The opinion expressly directed the trial court to consider the nature and complexity of the actions. (At p. 237.) This court did not, however, pass on the question of whether dismissal would have been an abuse of discretion, holding only that the trial court applied an improper standard under *Dunsmuir.* (*Ibid.*)

Two years later this court decided *Garza* v. *Delano Union Elementary School Dist., supra,* 110 Cal.App.3d 303, holding that the trial court abused its discretion in granting dismissal for delay in prosecution. Service was apparently made promptly there and the case was at issue slightly more than four months after filing. Thereafter, however, the plaintiff, for a variety of reasons, did not bring the case to trial until more than two years after the filing date. This court summarized the plaintiff's excuses as follows:

"Appellant's counsel has made the following showing in her attempt to establish excusable delay: (1) language differences; (2) difficulty locating client; (3) poverty of appellant; (4) prosecutorial problems—press of business, change in firm; (5) open extension to answer interrogatories by the District; and (6) stipulation vacating trial date and agreement to set date in future by stipulation." (110 Cal.App.3d at p. 311.)

After reviewing several other decisions, this court concluded that "[c]onsidering all of the circumstances, there was an abuse of discretion in dismissing the case for lack of prosecution." (*Garza* v. *Delano Union Elementary School Dist., supra,* 110 Cal.App.3d at p. 313.) The opinion particularly stressed the open extension of time for filing answers to interrogatories and the stipulation dropping the trial date and agreeing to set a new trial date. "The import of each of these factors is to dampen any sense of urgency in bringing the case to trial." (*Ibid.*) The opinion also noted that one defendant made no claim of prejudice from the delay and that the extent of prejudice claimed by the other defendant was speculative. (*Id.* at p. 311.)

The next published decision of this court involving the issue under consideration is *Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d 1552. A medical malpractice action was filed by the heirs of a decedent (Cubit) against a hospital and several doctors on January 19, 1981. Before this action was filed, the plaintiffs filed a workers' compensation claim against the decedent's employer alleging that Cubit died as a result of exposure to a toxic substance at work. After much investigation and consultation with several medical experts, the plaintiffs served the defendants in

the medical malpractice action on December 21, 1983, nearly three years after filing. The plaintiffs' theory of liability was that the defendants had improperly prescribed and administered Tylenol to Cubit when he was suffering from a diseased liver. The plaintiffs' first information concerning that theory of liability had been obtained from a medical expert about three weeks before they effected service on the defendants.

After the defendants were served, the action was pending for about a year and a half until the plaintiffs moved for special setting and the defendants moved for discretionary dismissal. During that period, the plaintiffs responded to three successive demurrers and filed amended complaints when the demurrers were sustained. They also responded to discovery initiated by the defendants. The trial court concluded that the plaintiffs had not prosecuted their action diligently and the delay prejudiced the defendants. Thus, the motions to dismiss were granted.

This court reversed. We held that the plaintiffs had demonstrated excusable delay, noting that before service was made the plaintiffs were attempting to determine the cause of Cubit's death by exerting diligent efforts to obtain an autopsy report and by consulting several medical experts. Their efforts culminated about three weeks before service when the plaintiffs obtained an expert's report pointing out the role Tylenol may have played in Cubit's death. The opinion also notes that after service was made, the plaintiffs were not idle. (*Cubit* v. *Ridgecrest Community Hospital, supra*, 194 Cal.App.3d at pp. 1567-1569.)

We also called attention to the plaintiffs' activities in the related workers' compensation case, noting that in that proceeding the deposition of one of the plaintiffs' key medical experts was attended by the attorney for one of the defendants in the malpractice action. (194 Cal.App.3d at p. 1568.)

Having concluded the plaintiffs demonstrated good cause for the delay in prosecution, this court went on to examine the defendants' claims of prejudice to see whether the trial court abused its discretion in dismissing the case. We found that the defendants' claims of actual prejudice (loss of evidence, unavailability of witnesses) were not supported by the record. (194 Cal.App.3d at pp. 1569-1571.) Finally, we rejected the defendants' claim that prejudice should be presumed from the long delay in serving the complaint. (*Id.* at pp. 1572-1573.)

We revisited the issue in *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra*, 210 Cal.App.3d 740. That action was filed on October 8, 1982, by State Compensation Insurance Fund (State Comp) under

Labor Code section 3852 to recover from alleged third party tortfeasors the amount of workers' compensation disability and rehabilitation benefits paid by State Comp to Ignacio Guzman. On September 17, 1985, when the State Comp complaint was still unserved, Guzman and his wife filed a complaint in intervention. Both complaints were served between September 24 and October 3, 1985, and the action was fully at issue in January 1986. The defendants' initial motions to dismiss were denied but when they were renewed in July 1987, the trial court granted them. We affirmed.

"An overview of the critical dates shows a singularly impressive record of delay and lack of diligence on the part of the plaintiff. The complaint was filed one day short of the statute of limitations and was not served until within two weeks of the running of the mandatory three-year service statute (§§ 583.210, 583.250). The plaintiff conducted no discovery in the action, apparently relying on the interveners to do the discovery. From the plaintiff's almost total inactivity both before and after the complaint-in-intervention, it appears to us the plaintiff was waiting for the injured employee Guzman to become a party and carry the burden of prosecution. The first at-issue memorandum was filed in June 1987, some three or four months short of the running of the mandatory five-year dismissal statute. (§ 583.310.) The matter was set for trial on a date 14 days after the 5-year statute had run. The motion to specially set was denied and the motion to dismiss was granted, approximately one month short of the five-year statute.

". . . . . . . . . . . . . . . . . . . . . . . . .

"The plaintiff seeks to explain this litany of delay by stating it did not pursue service of the complaint because it did not want to prejudice the interveners' rights noting they did not have an attorney to file a complaint-in-intervention until September of 1985. Plaintiffs admit the decision not to serve the complaint for almost three years was a tactical one. We do not consider this excuse to be an adequate one for not having pressed forward with the action. The likelihood is that had the complaint been promptly served, it would have spurred the interveners to earlier action. Be that as it may, in essence the plaintiff's attorney made the tactical decision that the third party claim would be best pursued jointly by the employee and State Comp.

"If one accepts counsel's opinion as State Comp's rationale for delaying service, it is difficult to imagine how the employee could have been prejudiced had State Comp promptly served the summons and complaint. In cases involving employee and employer third party claims, '[s]ubstantively, as well as procedurally, employer and employee actions are interchangeable:

regardless of who brings an action, it is essentially the same lawsuit.' (*County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 874 [140 Cal.Rptr. 638, 568 P.2d 363].)" (*State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra,* 210 Cal.App.3d at pp. 748-750, fn. omitted.)

We did not, however, rely solely on the inadequacy of the plaintiffs' showing as grounds for affirmance. We went on to hold that the trial court's finding that the defendants were prejudiced by the delay was supported by evidence. (210 Cal.App.3d at p. 750.)

Thus, *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra,* stands as the only published decision from this court holding that a plaintiff's offered excuse for delay in prosecution did not satisfy the plaintiff's initial burden. We believe that the underlying basis for that opinion was that the excuse offered was simply not credible or reasonable under the circumstances. In any event, the significance of that holding is diminished by our further reliance on a finding of actual prejudice. In *Cubit* v. *Ridgecrest Community Hospital, supra,* and *Garza* v. *Delano Union Elementary School Dist., supra,* we held as a matter of law that the plaintiff's showing of excusable delay was sufficient to enable the plaintiffs to rely on the policy favoring trial on the merits. In *United Farm Workers National Union* v. *International Brotherhood of Teamsters, supra,* the issue was not reached directly although the judgment of dismissal was reversed.

■ In our opinion, the approach followed by this court in its prior decisions is consistent with the apparent reason for the "some showing of excusable delay" rule announced by the Supreme Court and with the policies underlying the dismissal statutes. A plaintiff who has been inattentive to his case for an unreasonable period of time should not be able to nullify the dismissal statute by simply invoking the general policy favoring trial on the merits. The same is true when the plaintiff offers an excuse which, under the factual and procedural circumstances of the particular case, is not credible or is clearly unreasonable. If the excuse is credible and not clearly unreasonable, however, the court should consider all other factors, including prejudice to the defendant, before ordering dismissal. Otherwise, the statutory policy favoring trial on the merits could be nullified by a judicially constructed rule.

■ When the plaintiff offers some explanation or excuse reflecting a conscious decision not to serve or otherwise prosecute the action, we believe there are two essential questions the court must initially address. Is the explanation credible under all the circumstances? If the facts are disputed

and the trial court finds on substantial evidence that the explanation is merely an afterthought or pretext designed to cover up neglect, dismissal may be warranted. If the explanation is credible, however, the court should consider whether the reasons given for the decision are clearly unreasonable. That is, could a reasonably competent attorney conclude that delay was justified under the circumstances? If, as in *State Compensation Ins. Fund, Inc.* v. *Selma Trailer & Manufacturing, Inc.*, *supra*, the stated reason simply makes no sense, the plaintiff has not met his burden. In considering this question, however, courts should be careful not to engage in second-guessing attorneys' litigation decisions. If the decision is one which a reasonably competent attorney might have made under the circumstances, the burden should shift to the defendant to show that other factors, such as prejudice, support dismissal.

### 2. *Application of Law to Case*

#### A. *Plaintiffs presented a reasonable excuse for delaying service*

Plaintiffs contend they had a reasonable excuse for delaying service. The excuse was summarized by plaintiffs in each of the three cases in the court below as follows:

"[Plaintiffs'] opposition clearly establishes good cause . . . for the delay in service on the grounds that: (1) the pendency of similar cases, arising out of the same surgical technique employed by defendant and resulting in similar injuries to numerous patients, and which were being aggressively pursued by [plaintiffs'] counsel; (2) extensive discovery and production of evidence pertaining to the issue of negligence and standard of care established in the lead *Clague* case (*Thompson* v. *Clague*) is applicable to all of the other *Clague* cases[;] and (3) service of process and the conduct of discovery in these cases were deliberately staggered by [plaintiffs'] counsel so as to avoid creating unmanageable demands on both parties and their counsel."

In particular, plaintiffs argued below "that the pendency of the other *Clague* cases, with [plaintiffs'] counsel's decision to move *Thompson* v. *Clague* forward as the lead case on the common issue of negligence/standard of care, must be considered by this court as a valid and legitimate reason to stagger service of process in the other *Clague* cases."

The plaintiffs' argument was supported by a declaration of their attorney, Paul Melodia. Melodia recited substantial information obtained from Clague concerning the surgical procedure allegedly performed on the plaintiffs.

Some of the information was obtained from Clague's deposition taken in the Randall Thompson case on August 6, 1987. The declaration states that Thompson's case was settled in June 1989, and before the settlement Clague accepted service in four other actions filed by Melodia.

Melodia's declaration stated that on June 20, 1989, he contacted Clague's attorney, Donald Fischbach, about taking Clague's deposition in multiple cases but was advised that Fischbach "would not let Dr. Clague be deposed on more than one case in a single day, and that he would like to take the plaintiffs' depositions during the same time period." Fischbach also advised that his first available deposition dates were in October of 1989. Depositions were then scheduled in the four served cases on various dates beginning in October 1989 and ending in March 1990. The declaration stated that both Fischbach and Melodia "wish to be personally involved in the discovery depositions, and because both of us are busy trial lawyers, it is difficult to calendar all of the depositions within a short period of time."

The declaration also stated that in August of 1987 Fischbach told Melodia he was aware of other cases against Clague and was checking the filings on a regular basis. Melodia approached Fischbach concerning the possibility of discussing settlement of all pending cases against Clague and expressed a willingness to provide information on any of the cases.

Fischbach filed a declaration replying to Melodia's. Fischbach did not directly dispute any material facts asserted by Melodia. He did, however, claim that Clague had been prejudiced by the delay in service.

Rule 373(e) describes one of the factors to be considered by the court in evaluating a motion to dismiss for delay in prosecution as "the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case . . . ." The plaintiffs relied on this factor both in the court below and on appeal. In effect, the plaintiffs argue that their individual actions were parts of an overall group of cases against the same defendant arising from the same surgical procedure and sharing common questions of fact and law. Thus, the reasonableness of their decision to delay service in these cases must be viewed within the context of the overall litigation.

The lower court judges were unpersuaded by the plaintiffs' argument. The judge hearing the Hess and Putnam motions expressly noted that the Thompson v. Clague matter settled in June 1989 but service in these cases was not made until January 1990. The judge stated that he did not understand the delay in service following settlement of the Thompson case and suggested

the plaintiffs could have served the complaints and asked "for a continuance for trial purposes based on the common issues." The court expressly held that the plaintiffs had not shown excusable or justifiable delay and granted the motions without considering whether Clague was actually prejudiced by the delay in service.

From our reading of the transcript, we conclude that the judge did not reject the plaintiffs' excuse on credibility grounds and did not find that refraining from service pending settlement of the Thompson case was unreasonable. Instead, the court focused on the seven- or eight-month period following the Thompson settlement in June 1989. The court did not expressly discuss the plaintiffs' excuse for that period, i.e., that activation of these cases would unduly burden the attorneys who already had four similar cases with which to deal. In our opinion, that excuse is not clearly unreasonable. Reasonably competent attorneys in the position of plaintiffs' counsel could conclude that staggering service in the eight or more pending cases would accommodate the parties and the two attorneys involved in all of the cases by smoothing out the scheduling of discovery, trial, and other litigation events.

The court's suggestion that the plaintiffs could have served these cases and then moved for continuances is the type of second-guessing which we believe is inappropriate when a court is deciding whether the plaintiff has met his initial burden. In cases such as this it will always be possible to suggest that the plaintiff might have done something differently. That approach, however, obscures what to us is the relevant inquiry: Was the course actually followed by the plaintiff a reasonable one?

The plaintiffs were not statutorily required to effect service within two years. (Cf. § 583.210, subd. (a).) Of course, they could have done so, but should they suffer the ultimate penalty of dismissal, without any consideration of whether the defendant was prejudiced by delay, simply because they chose an alternate course? We think not. Our conclusion is consistent with *Cubit* v. *Ridgecrest Community Hospital, supra*, 194 Cal.App.3d 1552. There, the plaintiffs could have served the defendants within two years but their lack of knowledge as to the cause of death was a sufficient excuse for not doing so. (At pp. 1567-1569.)

The judge hearing the Ragsdale motion did not clearly announce the reasons for the order of dismissal. The court referred to rule 373 and several of the factors mentioned there without expressly relying on any particular one or more. The court cited three cases, *Black Bros. Co.* v. *Superior Court* (1968) 265 Cal.App.2d 501 [71 Cal.Rptr. 344], *Wong* v. *Davidian, supra*, 206

Cal.App.3d 264, and *County of Los Angeles* v. *Superior Court, supra*, 203 Cal.App.3d 1205. The court also commented that the plaintiffs' attorney had not made any effort to "coordinate" all the actions filed against Clague. Finally, the court simply concluded that "the merits are tremendously in favor of granting the motion to dismiss." Except for the court's reliance on the three cited cases and the failure to "coordinate" the various actions, we can only guess at the basis for the ruling.

The three cases relied on by the court do not support the ruling. In *Black Bros. Co.* v. *Superior Court, supra,* the plaintiff was allegedly injured in an industrial accident while working on a glue spreader. He filed a workers' compensation claim against his employer and also filed, on January 22, 1965, an action for damages against several defendants, including the glue spreader's manufacturer. The complaint was not served on the manufacturer until January 9, 1968, nearly three years after filing. The plaintiff claimed that delay was proper for several reasons, including that the amount of the compensation lien was not determined until near the end of 1965. The only excuse offered for delaying service after that point was that plaintiff's counsel needed sufficient time to develop the facts and law necessary to obtain jurisdiction over the manufacturer, which was a foreign corporation.

The appellate court in *Black Bros.* issued a peremptory writ of mandate directing the trial court to dismiss the action. The court rejected on credibility grounds the plaintiff's excuse for delaying service for nearly two years after the compensation proceeding was concluded, labelling that excuse as "meretricious." (265 Cal.App.2d at p. 509.) The court noted that the record showed the facts concerning the manufacturer's status were known to the plaintiff's counsel as early as March 1965, the law permitting service on a foreign corporation was then well settled, and there had been no showing of a need to "develop" anything further. (*Ibid.*)

Insofar as *Black Bros.* stands for the rule that dismissal is mandated when the plaintiff fails to make an adequate showing of excusable delay, it has been disapproved by the Supreme Court. (See *Denham* v. *Superior Court, supra,* 2 Cal.3d at p. 563.) In any event, the case is clearly distinguishable because the plaintiff's offered excuse there was not credible under the circumstances. Here there is no evidence, indeed not even a claim, that the plaintiffs did not delay service for the very reasons advanced in the lower court.

In its opinion the *Black Bros.* court discussed and rejected a contention by the plaintiff that the defendant was not prejudiced by the delay because both the defendant and its insurance carrier knew of the plaintiff's claim that the

glue spreader was inherently dangerous and defective and had caused injuries to the plaintiff. The court concluded that the contention was irrelevant because until actual service was made, neither the defendant nor its insurance carrier knew an action had been filed on the plaintiff's claim. Until actual service, the defendant "was under no legal duty to search the records to see if a complaint had been filed or to take any steps in the pending action to protect its interests." (265 Cal.App.2d at pp. 507-508.)

We need not decide whether the *Black Bros.* dictum is sound because again the case is factually distinguishable. It is undisputed here that Clague knew of the pendency of these actions and was actively engaged in opposing other actions which were part of the overall group of cases. Whether Clague showed that he was actually prejudiced by the delay in service is another question which the court below did not reach and which we discuss *post.*

*Wong* v. *Davidian, supra,* 206 Cal.App.3d 264, cited by the court below, affirmed a dismissal order when the plaintiff failed to bring his case to trial within four and a half years after filing. Apparently the only excuse offered was the pendency of a related action in which defendant Davidian was a cross-defendant. The appellate court found that excuse wanting, however, because the other action "was concluded in May 1983 and cannot excuse the three- and one-half-year delay that followed." (*Id.* at p. 267.) The plaintiff offered absolutely no excuse for a period of two and one-half years following conclusion of the other case when the instant case "lay completely dormant." (*Ibid.*)

*Wong* applied the rule that when a plaintiff offers no excuse for long delay, dismissal is warranted without an affirmative showing of actual prejudice. (206 Cal.App.3d at pp. 269-270.) The decision is not helpful here because the plaintiffs offered an excuse both for the period before settlement of the Thompson case and for the eight or nine months thereafter when four similar actions were being actively pursued.

*County of Los Angeles* v. *Superior Court, supra,* 203 Cal.App.3d 1205 is likewise inapplicable. The plaintiffs there filed a complaint on January 28, 1985. Service was not effected until January 6, 1988. The only excuse for delay was that "informal investigation and discovery was conducted by plaintiff's attorney during the two-year, eleven-month period between the filing of the complaint and the service . . . ." (*Id.* at p. 1208.) The appellate court issued a writ of mandate directing the trial court to dismiss the action.

The court rejected the plaintiff's offered excuse, stating that "the investigation or procurement of evidence does not excuse a long unexplained delay

in serving the complaint." (203 Cal.App.3d at p. 1209.) As we have already noted, that statement appears irreconcilable with this court's holding in *Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d 1552, 1567-1569. To the extent the two cases are in conflict, we will follow *Cubit.* Also, *County of Los Angeles* is factually distinguishable from this case. In *County of Los Angeles* the action was not related to any others and the plaintiffs' attorney simply made a vague, unspecific claim that during the period of delay he was conducting "informal investigation and discovery." Here, by contrast, plaintiffs' counsel provided the court with specific information about the discovery conducted on issues common to all the cases filed against Clague.

The trial court's indication that the plaintiffs' counsel was in some way remiss in not seeking "coordination" of all the pending actions is puzzling. Coordination of the actions was not available because all were pending in one court. (See § 404.) Perhaps the court was referring to the possibility of consolidation as authorized by section 1048. The cases do share a common question of fact, i.e., whether Clague's use of a particular surgical procedure was within the applicable standard of care. All other issues, including causation and the nature and extent of damages, however, varied from case to case. At the hearing on the Ragsdale motion, Melodia explained to the court that he did not seek consolidation because on those issues "each case would stand or fall on its own." His explanation is not clearly unreasonable. If the plaintiffs had moved for consolidation, it is entirely speculative to assume that the motion, which surely would have been resisted by Clague, would have been granted.

We are satisfied that the plaintiffs offered a credible, reasonable excuse for their delay in serving the complaints in these actions and thus met their initial burden of proof in opposing the motions to dismiss. The court below abused its discretion in granting the motions without considering all factors, including prejudice to the defendant. If the record contains evidence showing any prejudice to Clague from the delay or supporting any other factor justifying dismissal, we would remand with directions to reconsider the motions. If, however, the record is devoid of such evidence, we can determine the issue as a matter of law. Thus, we will address those issues not decided by the lower court.

B. *Clague did not show actual prejudice or any other factor justifying dismissal*

In his motions to dismiss, Clague claimed he had been actually prejudiced by the plaintiffs' delay in serving their actions. Neither judge below reached

or decided that claim, although the court hearing the Ragsdale motion did refer to "the inference of prejudice," citing *County of Los Angeles* v. *Superior Court, supra,* 203 Cal.App.3d 1205.

■ Any suggestion that Clague may rely on an inference of prejudice arising from the mere delay in service is unwarranted. As this court explained in *Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d 1552, prejudice may be inferred only from an *unjustified* and protracted delay in service. When the plaintiff shows good cause for delay, the policy favoring trial on the merits prevails. (*Id.* at pp. 1572-1573.) Because the plaintiffs established good cause for the delay here, prejudice may not be inferred. This is particularly so because Clague had actual knowledge these actions were pending. (Cf. *Luti* v. *Graco, Inc., supra,* 170 Cal.App.3d at p. 238 [presumption of prejudice proper from prolonged, unjustified delay in service *and* defendant's lack of knowledge of existence of action].)

■ Clague's attorney filed a declaration supporting his dismissal motions. The declaration claimed Clague had been actually prejudiced by the delay in service, stating:

"Defendant has not conducted the discovery necessary to adequately prepare a defense and will now be forced to investigate the matter and search for witnesses [] years after the incident. Additionally, with the passage of time, evidence may be lost or altered and the recollections of witnesses faded."

That vague statement is clearly inadequate to establish actual prejudice. (See *Cubit* v. *Ridgecrest Community Hospital, supra,* 194 Cal.App.3d at pp. 1569-1573.) The statement does not identify any particular witnesses or evidence that Clague may not be able to produce and merely asks the court to speculate on the subject.

In the Putnam and Hess actions, but not in the Ragsdale case, Clague's attorney supplemented the original declaration with a reply declaration expanding on the claim of actual prejudice.

"At all times since the filing of these numerous actions against Dr. Clague, counsel for the plaintiffs has had the opportunity to depose Dr. Clague six times on all issues surrounding the general surgical treatment of the patient in this matter as well. Contrarily, since the matter has never been served, counsel for defendant has not been able to take the deposition of plaintiff in this matter, nor requested to do so with the hope that the matter would never be served." The declaration went on to point out that the plaintiffs' counsel

had information about his clients' conditions and all doctors they had seen since surgery and had all of their medical records.

"However, defendant, without the matter being served, has not had the opportunity to depose anybody, nor subpoena any medical records, since the subsequent treating physicians have been unknown. Furthermore, plaintiff has had the opportunity to provide consultants/experts with files to review; defendant has not, since all records have not been available to defendant."

Clague's claims of prejudice from the inability or lack of opportunity to conduct discovery ring hollow.

A defendant is not prevented from conducting discovery merely because the action has not been served. He may appear in the action and notice depositions or demand a physical examination of the plaintiff even without service. (§§ 2025, subd. (b)(1), 2032, subd. (c)(2).) He may serve interrogatories, demand inspection of documents or other things, or serve requests for admissions "at any time." (§§ 2030, subd. (b), 2031, subd. (b), 2033, subd. (b).)

In addition, the undisputed evidence is that the plaintiffs' attorney "explicitly stated a willingness to provide information on any of the pending cases if any such information was requested. No such request was made."

The declaration of Clague's counsel reveals his reason for not conducting discovery in the Putnam and Hess cases was his "hope that the matter would never be served."

Thus, Clague clearly had the right and the opportunity to conduct discovery, formally or informally, but chose not to do so. While he was under no duty to initiate discovery or requests for information, he cannot show that he was prejudiced by any inability or lack of opportunity.

The uncontradicted evidence is that the two attorneys wished to be personally involved in the depositions taken in the related actions. In the other four pending cases, all of which were served before the Thompson settlement in June 1989, Clague's attorney was not available for depositions until October 1989 and the attorneys agreed on a deposition schedule for those cases taking them into March 1990. Even if the three instant cases had been served within the two-year period, it is highly unlikely that any depositions in them would have been taken by the time the dismissal motions were filed.

In short, Clague does not show that a single item of evidence has been lost or that a single witness is unable to recall material events. All he has actually

shown is that time has passed. As we observed in *United Farm Workers National Union* v. *International Brotherhood of Teamsters, supra*, "the trial court may not presume prejudice simply by the passage of time [citations]." (87 Cal.App.3d at p. 236; see also *Garza* v. *Delano Union Elementary School Dist., supra*, 110 Cal.App.3d at p. 311 [extent of prejudice arising from a defendant's inability to depose the plaintiff found, in dictum by this court, to be speculative].)

Clague also argues that the dismissal orders were proper when various factors mentioned in rule 373(e) are considered. Specifically, he cites his availability for service and the absence of discovery and/or settlement negotiations.

We do not see how those factors have any particular weight under the circumstances. We are not dealing with a single action unrelated to others. Instead, the plaintiffs' actions are part of a larger group. The progress of the overall litigation must be considered in determining whether the interests of justice support dismissing these three actions.

Clague's availability for service has no significance. This is not a case where the plaintiffs claimed to have some difficulty in locating the defendant. The plaintiffs made a conscious decision to delay service because of the pendency of the other actions. As long as the decision to delay service was reasonable, which we have concluded it was, availability for service is immaterial.

The record shows there was extensive discovery conducted by the parties in several of the actions included in the overall litigation. The absence of discovery in the instant actions is consistent with the reason given by the plaintiffs for delaying service and could not justify dismissal without some showing of prejudice.

Likewise, the absence of settlement negotiations has little weight here. The plaintiffs' attorney declared that he approached Clague's attorney concerning the possibility of discussing settlement of all the pending cases. That overture apparently met with no response, so the plaintiffs' attorney proceeded with his plan to activate the cases on a staggered basis. Again, since that decision was reasonable, the absence of further settlement negotiations does not support dismissal.

Clague did not demonstrate that he suffered actual prejudice from the delay in service or that any other factors or circumstances justified dismissal.

## DISPOSITION

The judgments (orders of dismissal) are reversed. Costs are awarded to plaintiffs and appellants.

Ardaiz, Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied March 2, 1992, and respondent's petition for review by the Supreme Court was denied April 23, 1992.