[No. G011727. Fourth Dist., Div. Three. Oct. 29, 1992.]

GEORGE C. YAO, Plaintiff and Appellant, v.
ANAHEIM EYE MEDICAL GROUP, INC., et al., Defendants and
Respondents.

**COUNSEL**

Jay S. Rothman and Kenneth B. Alexander for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Timoth J. O'Connor, Donald A. Ruston and James G. Bohm for Defendants and Respondents.

**OPINION**

**SONENSHINE, J.**—George C. Yao appeals from a discretionary dismissal of his medical malpractice action against Anaheim Eye Medical Group, Inc. (the medical group), Gunnar E. Christiansen, M.D. and Robert C. Wynsen, M.D. The case was dismissed on the basis of Yao's having failed to serve the

complaint until two years and forty days after its commencement. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 1988, Yao consulted an attorney, Edward Morris, regarding a potential medical malpractice claim. Morris ordered medical records from eight health care providers. The records of one provider were particularly difficult to obtain, and it was not until January 1989 that Morris had received all the records, reviewed and summarized them, and forwarded them to a physician to obtain a standard-of-care review. About the same time, pursuant to Code of Civil Procedure section 364,[1] he notified a number of medical facilities and physicians, including respondents, of Yao's intention to file a medical malpractice action. The insurer of two of the physicians advised Morris it was investigating the claim.

The standard-of-care consultant did not provide Morris with an opinion for 14 months, and when the written evaluation finally arrived on March 8, 1990, it was unfavorable to Yao. On March 19, Morris forwarded the report to his client, noting that he and Yao needed to discuss how to proceed. On March 28, Yao wrote back to Morris, advising him that the consultant's letter demonstrated at least three significant misconceptions about Yao's medical history. On April 9, Morris forwarded his client's letter to the consultant and asked the doctor to respond as to whether the questions raised would have any effect on his opinion. The consultant did not respond. Conscious of the approaching expiration of the statute of limitations period, Morris filed the complaint on April 14, alleging Yao suffered a detached retina and near-blindness in his left eye as a result of defendants' negligent treatment of his uveitis.

On May 21, Yao sent a letter to Morris about the results of a magnetic resonance imaging (MRI) procedure he had recently undergone, which Yao believed might constitute "new evidence" bearing on the issue of liability. In light of this development, Yao wanted Morris to pose a series of new questions to the consultant. Morris forwarded the letter and the MRI records to the physician. Once again, there was no response.

In July, Morris found another physician and obtained his agreement to examine Yao for the purpose of determining his present condition and

[1]Code of Civil Procedure section 364 requires a plaintiff to give 90 days' prior notice of his or her intention to commence a professional negligence action against a health care provider.

All further statutory references are to the Code of Civil Procedure unless otherwise specified.

rendering a second opinion on liability. Morris wrote to Yao, asking him to submit to the examination, but Yao did not do so. Morris continued to refrain from serving the complaint, believing he should obtain a favorable medical opinion before proceeding further, to avoid any potential malicious prosecution suit.

On January 16, 1991, Yao consulted with a second law firm, Jay S. Rothman & Associates, regarding his claim. Rothman immediately obtained Yao's medical records and initiated a standard-of-care review. Declarations, somewhat equivocal as to relevant times, were filed by Yao's new counsel, Kenneth B. Alexander, an associate in the firm of Jay S. Rothman. He first attested: "In March 1991, following the review, Plaintiff caused a substitution of attorney to be executed by the client and attorney and forwarded same to Plaintiff's former attorney, Mr. Morris." In a later declaration, Alexander stated: "Because the consultant reviewing the case was extremely busy during this time, he was not able to meet with this firm reagrding [*sic*] the results of the review until early April 1991. However by telephone conversation on or about March 30, 1991, the consultant told this declarant that he felt there was a case, but that he had some problems with aspects of the case that he wanted to discuss. [¶] 4. Thereafter, based on the consultants [*sic*] opinion, this firm executed the Substitution of Attorney form and mailed it to attorney of record Edward Morris."

In any event, the substitution could not have been sent to Morris earlier than April 5, because that is the date of the transmittal letter from Alexander. Morris signed and returned the document on April 10, and turned over the remainder of Yao's files. Rothman then met with his consultant on April 12, as planned, and decided to "actively pursue" the case. On May 2, he filed the substitution of attorney form, which was rejected by the clerk for deficiencies. Rothman refiled the substitution on May 13, and then, on May 24, served the complaint on the health care providers. It was two years and forty days after the filing of the complaint.

On June 24, the medical group moved to dismiss pursuant to section 583.420, subdivision (a), for failure to serve or bring the action to trial within two years from its commencement. Yao opposed, setting forth in declarations the facts summarized *ante*. The court granted the motion.[2] It later denied Yao's motion for reconsideration and granted the motions of Drs. Wynsen and Christiansen for dismissal for delay in service.

[2]Yao calls our attention to comments made by the court regarding a backlog of civil actions and the need to "weed out" those not diligently prosecuted. While we do not reverse a correct ruling on the basis of the court's incorrect reasoning (see *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]), we detect an emphasis on

## DISCUSSION

### 1. *Governing Law*

■ Under section 583.420, subdivision (a)(1), the court may dismiss an action not served within two years after its commencement.[3] Where the motion to dismiss is granted, the plaintiff must show a manifest abuse of discretion resulting in a miscarriage of justice. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) "Although discretion is vested in the trial judge, that discretion is not unfettered. It cannot be exercised arbitrarily, but must be an impartial discretion to be exercised in conformity with the spirit of the law and in a manner to subserve the ends of substantial justice. [Citation.]" (*City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 561 [133 Cal.Rptr. 212].) While the purpose of expediting the administration of justice by requiring plaintiffs to diligently prosecute their lawsuits is laudable (see *Blank* v. *Kirwan, supra,* 39 Cal.3d 311, 332), "[t]hat purpose, in turn, is subordinate to the policy favoring a trial on the merits." (*Cordova* v. *Vons Grocery Co.* (1987) 196 Cal.App.3d 1526, 1532 [242 Cal.Rptr. 605, A.L.R.4th 1440].) As the Supreme Court says: "It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits . . . ." (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].)

Recently, the Fifth District Court of Appeal traced the development of the law regarding a court's discretion to dismiss an action for delay in prosecution. (*Putnam* v. *Clague* (1992) 3 Cal.App.4th 542 [5 Cal.Rptr.2d 25].) The *Putnam* decision points up the need for consistent guidelines as to what constitutes an excuse or justification for delay. ■ We believe the *Putnam* court articulated an appropriate approach to analysis of the issue of abuse of discretion in dismissal cases such as the one before us now: "When the plaintiff offers some explanation or excuse reflecting a conscious decision not to serve or otherwise prosecute the action, we believe there are two

---

fast track clear-cutting, perhaps to the detriment of more legitimate concerns in a discretionary dismissal situation.

[3]Subdivision (a)(2)(b) of section 583.420 permits dismissal when the case is not brought to trial within two years after its commencement "if the Judicial Council by rule adopted pursuant to Section 583.410 so prescribes for the court because of the condition of the court calendar or for other reasons affecting the conduct of litigation or the administration of justice." And California Rules of Court, rule 372(a), adopted under the authority of the statute, "to reduce unnecessary delay in the resolution of litigation and to improve the administration of justice" (rule 372(b)), provides in pertinent part: "The court . . . on motion of the defendant may dismiss an action under . . . [section 583.410] . . . if the action has not been brought to trial or conditionally settled within two years after the action was commenced against the defendant."

essential questions the court must initially address. Is the explanation credible under all the circumstances? If the facts are disputed and the trial court finds on substantial evidence that the explanation is merely an afterthought or pretext designed to cover up neglect, dismissal may be warranted. If the explanation is credible, however, the court should consider whether the reasons given for the decision are clearly unreasonable. . . . If the decision is one which a reasonably competent attorney might have made under the circumstances, the burden should shift to the defendant to show that other factors, such as prejudice, support dismissal." (*Putnam* v. *Clague, supra*, 3 Cal.App.4th at pp. 557-558.) We utilize the *Putnam* court's approach in examining the showing made by Yao.

## 2. *Excuse for Delay*

■ Under *Putnam*, we first decide whether the excuse offered by Morris for holding off serving the complaint is credible. The health care providers did not raise objections to the declarations offered by Yao, which, we note, consisted almost exclusively of hearsay. We thus take them at face value. There is no factual dispute as to Morris's inability to obtain an earlier production of all medical records or a more timely standard-of-care review. There is nothing in the record to impeach the offered excuse, and it does not appear to be pretextual or an afterthought alibi for negligence. Thus, the reason offered by Yao for the delay is inherently credible, and we move to the second inquiry under *Putnam*.

Were the reasons given for the delay unreasonable? As for Yao's first attorney, Morris encountered difficulties in obtaining pertinent medical records from eight different sources. The consultant responsible for the standard-of-care review did not place a high priority on completing his report. When Morris finally received it, it was unfavorable. He immediately forwarded it to Yao, and Yao responded with information he felt might be relevant to changing the expert's mind. Morris passed along the information. He later sent the expert more information by way of Yao's recently obtained MRI records, which could possibly shed light on the liability issue. The expert never responded. Still, Morris did not give up. He found another expert who agreed to examine Yao. But Yao, possibly believing he had been examined sufficiently already, decided to get another legal opinion on his case.

We cannot say Morris's delay in serving the complaint was unreasonable. A reasonably competent attorney in his place might well have made the same decision. We note that in medical malpractice cases, the attorney is no longer required to file a certificate of merit. (Former § 411.30, repealed by its own

terms, effective Jan. 1, 1989.) But there is no question that in a case involving causation of a detached retina and blindness, Morris never would have been able to proceed to trial without a qualified expert. (See e.g., *Folk v. Kilk* (1975) 53 Cal.App.3d 176, 185 [126 Cal.Rptr. 172]: ["Where a medical process or procedure is not a matter of common knowledge, expert testimony is necessary to determine whether a probability of negligence appears from the happening of an accident or untoward result."].)

Under the circumstances, we cannot say Morris's concern about a malicious prosecution suit by one or more of the health care providers was unreasonable. Nor can we say his withholding service pending receipt of a favorable standard-of-care opinion was unreasonable. Any inconvenience or expense occasioned to a physician defendant by a patient's *filing* of a complaint is certainly less than the inconvenience and expense caused by its *service*. And we have little doubt that the threat of a malicious prosecution suit bears a proportional relationship to the extent the litigation causes a defendant to incur expenses and suffer stigma, real or imagined. Thus, we cannot say a reasonably competent attorney would throw caution to the winds in his or her haste to serve what might later prove to be an improvidently-filed medical malpractice suit.

As for the delay after Rothman took over the case, we believe last-minute representation by new counsel is among the factors the court should consider in its assessment of diligence. Here, it was a *very* short time between Yao's first contact with Rothman, in January, and the May service of the complaint. During that brief interval, Rothman obtained the medical records, had them reviewed by an expert, talked to the expert regarding his preliminary opinion, met with the expert to further discuss the case, and obtained and filed a substitution of attorney. We could speculate on the possibility that Rothman might have saved a day here, a week there, but we cannot say as a matter of law that a reasonable attorney finding himself or herself in Rothman's position would have made the decision to go forward with the case prior to the time of the expert consultation.

Thus, Yao offered a legally sufficient excuse for his failure to serve the complaint within the initial two year period after commencement of the action. At that point, the burden shifted to the health care providers to demonstrate prejudice.

### 3. *Prejudice*

The parties agree, as they must, that once a plaintiff has carried his or her initial burden of establishing an excuse for delay, the mere passage of

time does not establish prejudice to the defendant. (*United Farm Workers National Union* v. *International Brotherhood of Teamsters* (1978) 87 Cal.App.3d 225, 236 [150 Cal.Rptr. 761].) As this court has previously said, the trial court may presume prejudice only "where a delay in service of the summons and complaint is prolonged and unjustified and defendants had no actual knowledge of the existence of the action." (*Luti* v. *Graco, Inc.* (1985) 170 Cal.App.3d 228, 238 [215 Cal.Rptr. 902].) ▮ Here, the health care providers did not show prejudice; they argued that they were not required to do so. They were mistaken.

We need not leave it to the trial court to consider the factor of prejudice at this point because the record demonstrates an absence of actual prejudice. The health care providers do not deny they were provided with the statutory notice of Yao's intent to file an action. And they do not deny an investigation was undertaken by defense insurance or risk management personnel. As noted in *Hilburger* v. *Madsen* (1986) 177 Cal.App.3d 45, 50 [222 Cal.Rptr. 713]: "The insurance carrier for both [physician defendants] was fully informed of the suit at an early date, had investigated appellant's allegations and participated in settlement negotiations. . . . Both [defendants'] declarations offer general and well-worn allusions to prejudice [citation], but the involvement of the insurance carrier and the early notices of intentions to sue negates such a claim. [Citation.] Furthermore, there was no finding by the court of prejudice."

The order of dismissal and the judgment are reversed. Yao shall recover his costs on appeal.

Sills, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied November 17, 1992, and respondents' petition for review by the Supreme Court was denied January 14, 1993. Panelli, J., was of the opinion that the petition should be granted.